Deaderick *v.* Mitchell.

## DEADERICK *v.* MITCHELL.

1. CHANCERY JURISDICTION. *Fraud in obtaining endorsement of note.* Where the endorsement of a party to a note has been procured through the false and fraudulent representations of the holder thereof, that he had been authorized by the maker to request his endorsement, a court of equity, upon proper application made, will perpetually enjoin such holder from the collection of the note as against the party whose endorsement has been thus obtained.

2. SAME. *Misrepresentation of material fact. Effect of.* Misrepresentation of a material fact by a party, whereby the action of another has been induced, is a conclusive ground for relief in equity, without regard to the character of such misrepresentation, whether made innocently, through mistake, or wilfully and with intent to deceive.

Cases cited: Donelson *v.* Weakley, 3 Yer., 178; Lewis *v.* McLemore, 10 Yer., 206; Merriwether *v.* Larmon, 3 Sneed, 447.

FROM KNOX.

From the Chancery Court at Knoxville. O. P. TEMPLE, Chancellor.

D. D. ANDERSON for complainant.

WEBB & TAYLOR for respondent Mitchell.

SNEED, J., delivered the opinion of the court.

The defendant recovered a judgment on the 16th November, 1870, before a justice, against the complainant as endorser of a promissory note executed by one Samuel H. Davis, on the 30th July, 1870, due at ninety days, for $255, and payable to the order of

the complainant at the Knoxville Bank of Knoxville. The defendant was the owner and holder of the note from its execution, and brought the said action upon it. The complainant brought the said judgment by appeal into the Circuit Court of Knox County, where the case is still pending, under an injunction obtained by complainant under this bill. The complainant seeks a perpetual injunction against the collection of said judgment upon the ground that the defendant Mitchell obtained his said endorsement by falsely and fraudulently representing to him that said Davis, the maker of the note, had requested him to endorse it, whereas, in truth, the said Davis had made no such request, and the representation of said defendant was a mere device to get security on the note of Davis, who was known to the defendant Mitchell to be utterly insolvent. The theory of the bill is, that the said Mitchell, knowing the insolvency of Davis, who was his debtor, took advantage, without the request or knowledge of Davis, of the friendly intimacy existing between Davis and complainant, and falsely represented to complainant that Davis had requested him to endorse the note, whereas Davis had made no such request, and by this device and deception defendant sought to make Davis's note good, which otherwise was worthless. It seems that the relations existing between complainant and Davis were of a very friendly and kindly character, and complainant avows his willingness to have endorsed for Davis if the latter had requested it, and that he did indeed endorse the note in question under the belief that Davis had requested

Deaderick *v.* Mitchell.

it, and this belief was generated by the false and fraudulent representations of defendant.

The answer denies positively the allegations of fraud. It states that Davis being indebted to defendant, and defendant, knowing Davis to be insolvent, and knowing also the relations between complainant and Davis, went to complainant and represented Davis's indebtedness to him, and that Davis, in. his broken fortunes, would hesitate to call upon any friend to endorse for him, and asked complainant if he would endorse a note he proposed to get from Davis for his indebtedness; that the complainant replied that he would do so, and told him to bring the note to him and he would endorse it; that he accordingly prepared the note with complainant named therein as payer—told Davis that complainant had agreed to endorse it—got Davis's signature and took the. note to complainant, who endorsed it.

The allegations of fraud in the procurement of the endorsement being thus denied in the answer, and the bill and answer being both sworn to, we must look to the evidence to ascertain and settle the equities of the parties. If it be true that the complainant was induced by the false representations of the defendant to endorse the note in question, as alleged in the bill, a court of equity will not be slow to relieve him. Indeed, so jealous is a court of equity in this respect that it has become a settled principle of equity jurisprudence that "whether a party misrepresented a fact knowing it to be false, or made an assertion without knowing it to be true," is not material. If a party

innocently misrepresent a material fact by mistake, upon which another party is induced to act, it is as conclusive a ground for relief in equity as a willful and false assertion, for it operates as a surprise and imposition on the other party: 10 Yer., 206; 1 Story Eq., 193; 3 Sneed, 447; 3 Yer., 178. The contract of endorsement assumes, in legal contemplation, a priority between the maker and the endorser, and the presumption is that the endorser signs at the request of the maker and for his benefit. A party may bind himself, however, to the holder without such request, and for some other consideration give credit to commercial paper by his endorsement. If, however, such endorsement be procured by the fraudulent representations of the holder that some prior party on the paper had requested the endorsement, such contract of endorsement would be voidable by reason of the fraud.

Now there are but three witnesses examined in this case. The maker of the note, Davis, is the first witness. He says he was indebted to the defendant Mitchell, and that Mitchell came to him and asked him to close the matter by note. That he told Mitchell he would give him a note if it would do him any good, but that in his failing condition he could not furnish him any security, and that he could not ask any friend to become bound for him. He asserts positively that he never authorized Mitchell to ask the complainant to endorse the note, and that he never made any such request of complainant himself. He states that Mitchell, when assured that he, Davis,

Deaderick *v.* Mitchell.

had no objection to giving the note, stated that he, Mitchell, would find an endorser or surety. It seems that Mitchell had, prior to this, had an interview with complainant, and, as he states in the answer and in his deposition, had ascertained the complainant's willingness to endorse the note. After he had the interview with Davis, he says he then saw complainant again and told him what had occurred between Davis and himself, when complainant told him to get the note and bring it to him and he would "go on it." On the same day, as he states, Davis made the note, payable on its face to complainant or order, and he, Mitchell, carried it to complainant, who endorsed it, and that he did not say or intimate to complainant that Davis had requested him to sign it. The complainant states in his deposition that defendant did represent to him that Davis wished or requested him to endorse the note; that he stated to defendant he would not endorse without such request; and that he did endorse, believing at the time said Mitchell's statement to be true. He states further, that when he met Davis afterwards and was informed by him that he made no such request, he at once declared that he would not be bound upon an endorsement so obtained, and this he afterwards declared to both Mitchell and Davis, and that he proposed to the latter to take some steps to relieve him, when Davis dissuaded him, saying that he would pay the note when it was due.

Thus far, then, we have the testimony of the complainant asserting the fraud, supported by Davis to

the extent that if the defendant made such represen-
tations, they were false. Now, there is nothing in
Davis's testimony which corroborates the assertion of
complainant that the representations were actually made.
But, in the opinion of the court, there are concessions
in the deposition of the defendant himself which, con-
sidered in connection with certain discrepancies between
his answer and his deposition, corroborates the testi-
mony of Deaderick, and are conclusive of the case.

The issue is, did the defendant make the represen-
tations charged? If he did, then Davis has shown
them to be false. He is asked in his cross exami-
nation the direct question, if he told the complainant
that Davis had authorized him to request the com-
plainant to endorse the note. This was a plain ques-
tion, and might have been answered by an unequivo-
cal negative, that would at once have disposed of the
case. But he answers it in the words following:
"I did not tell him *in terms* that said Davis had
authorized me to get his name to the note, as it was
apparent from the nature and circumstances of the
note and transaction that complainant was expected to
endorse the note, as well as being understood pre-
viously between him and myself that he would do so.
I presented the note to him, making some common-
place remark, when he endorsed the same and handed
it back to me."

We are satisfied, upon the proof, that the com-
plainant's theory of this case is the true one; and if
there were nothing else in the case, this answer of
the defendant is, in our judgment, a confession that

·though he may not by positive assertion have made the representations charged, yet that he used words equivalent by which he made that impression, which is the same thing, and perhaps more deserving of the reprobation of a court of equity. Nor can it be pretended that by any act or declaration of the complainant disclosed in the evidence has he ever ratified this endorsement. He has repeatedly repudiated the act and denied his liability, and upon no principle can he be held bound by the injunction of Davis to let the matter stand, and the promise of the latter to pay the debt or adjust the difficulty. The complainant is entitled to the relief he seeks, and a decree will be entered accordingly.