SOUTHERN *v.* COWAN STONE Co. *et al.*

(*Nashville,* December Term, 1948.)

Opinion filed July 9, 1949.

WALTER M. HAYNES and FRANK HICKERSON, Winchester, for plaintiff in error.

FRAZIER, ROBERTS & WEILL, Chattanooga, HARRY C. TEMPLETON, Winchester, for defendants in error.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The trial judge sustained a demurrer to the plaintiff's declaration and dismissed her suit. She has seasonably appealed and assigned error.

The plaintiff charged in her declaration, as amended, that the defendants were the owners and operators of a ramp for loading lime and stone into railroad cars at Anderson, Franklin County, Tennessee; that said ramp was approached from a public road by a road leading from said public road to said ramp. "The road and ramp leading from said public road were built for a road, used by the defendants as a road, and the public generally used said road and ramp as a public road, and the said road and ramp were held out to the public as a public passageway. *There was no way to distinguish the line of demarcation between the public road and the road leading onto the ramp.*" (Italics ours).

At the end of this ramp which "was twelve to fifteen feet from the regular public road" was a sudden drop of twelve or fifteen feet onto the railway tracks of the defendant. This roadway and ramp "were unguarded, had no rail, light guard or other precaution taken to warn the public".—"There was nothing at the end of the ramp to indicate that there was a drop where one would either fall into a railroad car or onto the railroad

tracks." The "road and ramp appeared more like the public road than the public road itself at night because it was lighter in color" due to fresh rock being strewn on it.

The declaration further charges that:

"On or about the date aforesaid, plaintiff arrived in Anderson, Tennessee, on the midnight train to go to a home her husband had secured for her. Plaintiff had never been to Anderson, Tennessee, and had sent word for her husband to meet her. Upon her arrival and alighting from the train she looked for her husband but he was not at the station. She had been told the general direction of the house in which they were to live and she began traveling in a northerly direction toward the place where she thought the house was. Traveling along the public road she saw the road ramp bearing to her right, which appeared to her to be the public road. She proceeded along the road and ramp until without warning, she stepped into space, fell twelve or fifteen feet, and landed on the railroad tracks directly under said ramp."

The demurrer of the defendants is that:

"The allegations show that she was a trespasser upon the private property of the defendants, that she voluntarily left the public road on which she was traveling and came onto the property of the defendants. The allegations show that she was on defendants' property in the night time without any invitation, license or permission, or knowledge of either of the defendants. The allegations likewise fail to show that her injuries came about because of any design or wilful conduct on the part of either defendant. Neither defendant, therefore, owed her any duty whatsoever, and as a matter of law under

the allegations in the declaration, she is not entitled to recover against either defendant.''

The trial court concluded that the plaintiff was ''a trespasser or, at best, a licensee'' and was therefore ''owed no duty of ordinary care''.

█ Beginning with our first judicial decisions in this country the courts have uniformly held that the landowner is not liable for harm to trespassers caused by the failure of the landowner to put his land in a reasonably safe condition for the reception of a trespasser. Various reasons have been assigned for so holding. ''The true explanation seems to be merely that, in a civilization based on private ownership, it is considered a socially desirable policy to allow a man to use his own land in his own way, without the burden of watching for and protecting those who come there without permission or right''. Prosser on Torts, page 611.

A number of exceptions to this rule have gradually been adopted by the courts because of an increasing regard for human safety.

The rule above set forth is not applicable when ''a possessor of land who so maintains a part thereof that he knows or should know that others will reasonably believe it to be a public highway . . .''. When he so uses his land the landowner ''is subject to liability for bodily harm caused to them while using such part as a highway, by his failure to exercise reasonable care to maintain it in a reasonably safe condition for travel.'' Am. Law Inst. Restatement, Torts, Vol. 2, section 367.

In commenting on the statement last above quoted the authors of this work say that:

''One whom a possessor of land intentionally or negligently misleads into believing that part of his land is

a public highway, is entitled to expect that the possessor will afford him a security similar to that which he would be entitled to expect were the land actually a highway.''

This rule ''applies not only where the possessor of land has paved a strip of his land adjoining the highway or has otherwise dealt with it so as to make it appear to be part of the highway, but also where he has so constructed a private road branching off from a public highway that he should realize that persons traveling on the highway would reasonably regard it as a continuance thereof.''

''The injured person, being misled by the other's conduct, is clearly not a trespasser and, therefore, he does not fall within any of the classifications under which it is customary to place persons entering the land.'' Restatement, etc., *supra*.

The rule above set forth clearly seems the fair, reasonable and human view to take. Why should one be allowed to mislead either intentionally or through negligence, another to his harm and not be answerable therefor? In 25 American Jurisprudence at page 812, section 530, the author says: ''Liability on the part of the abutting owner may be predicated upon the fact that his premises are so connected with the highway as to indicate that they constitute a continuation or extension of the way, or as to constitute an implied invitation to go upon such premises.''

The same conclusion is reached in Prosser on Torts, page 605, section 76, where the author says: ''Likewise, if he maintains a part of his land that it appears to be a highway, as where he paves a strip next to the street, or gives a private way the appearance of a public one, he must use reasonable care to see that there is no danger to those who are misled into using it. It is often said in

such cases that there is an *implied invitation* to enter, but the *true basis* of *liability* seems to be the *misrepresentation* as to the character of the property.'' (Emphasis ours).

The various texts we have quoted from are well supported by authorities from other jurisdictions and are cited in notes at the conclusion of the quotation in the varous texts. We have examined many of these cases and find them supporting the text.

■ The principles of law applicable to invitees, licensees, and trespassers have frequently been before this Court. To mention a few, see *Westborne Coal Co.* v. *Willoughby*, 133 Tenn. 257, 180 S. W. 322; *Chattanooga Warehouse & Cold Storage Co.* v. *Anderson*, 141 Tenn. 288, 210 S. W. 153; *Clapp* v. *LaGrill*, 103 Tenn. 164, 52 S. W. 134; *Worsham* v. *Dempster*, 148 Tenn. 267, 255 S. W. 52; *Garis* v. *Eberling*, 18 Tenn. App. 1, 71 S. W. (2d) 215; *City of Knoxville* v. *Baker*, 25 Tenn. App. 36, 150 S. W. (2d) 224; and many, many more. We will not review these authorities because the factual situation in each is different. The law as applied in those cases was correctly applied to the factual situation presented. The principle here applicable may be stated in this way: Where premises adjoining a public way are so connected with the public way as to indicate a public use, the property owner must use reasonable care to see that there is no danger to those who are misled into using it.

■ In thus adopting this principle the landowner is not required to go to any unusual trouble or costs. Where probability of injury is likely, when the injury might have very simply been guarded against, it seems that public policy requires that it be prevented even at the cost

of trenching upon the traditional privileges of land-owners.

For the reasons above expressed we must reverse the judgment below and remand the case for further proceedings consistent with this opinion.

All concur.