TENNESSEE HOSPITAL SERVICE ASS'N, Complainant, Appellant, v. ROBERT T. STRANG et al., Defendants, Appellees.—354 S. W. (2d) 488.

Eastern Section.   September 8, 1961.

Petition for Certiorari Denied by Supreme Court, February 8, 1962.

264

R. E. Armstrong, Jr., Kingsport, for appellant.

Wilson, Worley & Gamble, Kingsport, for appellees.

McAMIS, P. J.  The Tennessee Hospital Service Association, a general welfare corporation, brought this action against Joyce G. Fee, one of its policyholders, and Doctors Merritt B. Shobe and Robert T. Strang to recover $2235.00 which it claims to have paid Miss Fee upon false certificates signed by Doctors Shobe and Strang.  The bill is based upon alleged fraud and deceit in signing sixteen separate certificates falsely showing as many operations, as a result of which complainant paid Miss Fee $2235.00.

A decree upon pro confesso was rendered against Miss Fee.  The Chancellor found, however, that the doctors were fraudulently induced by Miss Fee to sign false certificates and that they acted innocently and

received no part of the money. The Chancellor also held that complainant owed some duty to protect itself against the fraud of Miss Fee and seems to have been of opinion that, under all the circumstances, complainant should have discovered the fraud and was, therefore, not entitled to rely upon the certificates. From the dismissal of the bill as to Doctors Shobe and Strang, complainant has appealed.

There is no substantial dispute as to the facts. Defendants concede that their signatures appear upon all sixteen certificates falsely showing that they performed that number of bone operations upon Miss Fee and upon fictitious persons who were described in the certificates as being her husband and sons. Dr. Shobe's testimony is to the effect that Miss Fee was a trusted employee whose duty it was to fill out such certificates for himself and Dr. Strang; that he must have signed the eleven certificates in blank and that they must have been subsequently filled in, contrary to his express instructions, by Miss Fee. Dr. Strang's explanation as to the five certificates signed by him, as we understand, is that they must have been presented to him by Miss Fee concealed among other certificates and that he failed to detect their presence.

Complainant's home office is located in Chattanooga where claims are processed for payment. It operates over a large territory including Kingsport where Doctors Shobe and Strang have been practicing as partners for a number of years. Complainant issues two policies, the Blue Cross which obligates it to reimburse the policy holder for hospital expenses and the Blue Shield which covers physician's fees for certain operations upon the

policy holder or members of his or her family. Only Blue Shield coverage is invloved here.

As we understand, complainant furnishes the various surgeons practicing within its territory printed forms entitled "Doctor's Report of Services" which are to be filled out and signed by the claimant and by the operating surgeon. The printed certificate to be signed by the holder of the policy reads:

"IF YOU WISH THE PLAN TO PAY YOU—SIGN HERE. The physician's fee has been paid and receipted bill is attached. Please reimburse me in the amount available to me, pursuant to the provisions of my contract."

The certificate to be signed by the operating surgeon reads:

"I, a duly licensed physician (M.D.), certify that I performed the above services upon the patient. All information above shown is complete and correct to the best of my knowledge."

The relationship between Miss Fee and the defendants, Shobe and Strang, is developed in some detail. She became their patient about 1955 when they began to treat her for almost complete paralysis from the waist down. Out of sympathy, they became interested in her case and attempted to rehabilitate her to the point she could do secretarial work. They made no charge for their services extending over a long period of time. When these efforts were successful they obtained work for her by the Doctor's Building, a corporation in which they along with other doctors owned stock, and which owned the offices they occupied.

Although employed by the Doctor's Building, Miss Fee's duties consisted of mailing statements, filling out blanks and handling mail for doctors having offices in the building, including Doctors Shobe and Strang. They trusted her and she had never previously betrayed their trust. There is no doubt that she grossly abused their confidence by using their signatures over a period of months to defraud complainant in the manner shown.

These circumstances make a strong appeal to sympathy. The question must be decided, however, upon recognized principles of law and equity hereinafter discussed and when so considered we think complainant's right to recover is clear, unless it lost the right to rely upon the certificates of Doctors Shobe and Strang by failing upon its own account to take steps to detect the fraud. These questions will be considered in order.

Defendants Shobe and Strang knew that complainant required a physician's certificate in support of claims made against it and must have known that a certificate signed by them would almost certainly be paid. In signing certificates in blank or without checking them to see whether they had performed an operation on the claimant they were guilty of a serious breach of duty to complainant amounting in equity to a constructive fraud. It is of no consequence to complainant whether defendants acted wilfully or through ignorance resulting from negligence. There would be a great moral difference but no legal difference.

"If a party innocently misrepresent a material fact by mistake, upon which another party is induced to act, it is as conclusive a ground for relief in equity as a wilful or false assertion, for it operates as a surprise

and imposition upon the other party. 10 Yer., 206; 1 Story Eq., 193; 3 Sneed, 447; 3 Yer., 178'' Deaderick v. Mitchell, 65 Tenn. 35, 38.

''A casual response to a third person, made in mere friendliness or courtesy, may not stand on the same plane, where it is considered who is to assume the risk of negligence or error, as information furnished by the medium of deliberate certificate, indisputably an act in the law, intended to sway conduct. A person may be held for careless information furnished in performance of a service, which, in addition, happens to find in a certificate its culmination and summary, where the transmission of the information contained in the certificate to a third person is the end and aim of the transaction, certain, immediate and deliberately, willed.'' 23 Am. Jur. 919, Fraud and Deceit, Section 126.

■ When defendants negligently signed the certificates they placed in the hands of Miss Fee the means of committing a fraud upon complainant making applicable the rule that where one of two innocent parties must suffer a loss occasioned by the fraud of a third person he whose negligence enabled the third person to commit it must bear the loss even though he who provides the means obtains no benefit therefrom. Peoples Bank v. Brown, 8 Tenn. App. 281; Commercial Bank & Trust Co. v. Southern Industrial Banking Corp., 16 Tenn. App. 141, 66 S. W. (2d) 209; Gibson's Suits in Chancery, Section 52. 23 Am. Jur. 1010, Fraud and Deceit, Section 186.

■ As above said, measured by these principles, we think the liability of defendants Shobe and Strang is clear. We come then to the second question: Should

complainant, under the circumstances to be stated, be deprived of the right to rely upon the certificates?

Defendants insist that complainant was put upon inquiry (1) by the large number of claims for medical expenses claimed to have been incurred in a single family within a period of months; (2) the certificates signed by Miss Fee, above quoted, incorrectly stated that a receipt by the doctor was attached; (3) the fact that the doctors' certificates show the treatment, in some instances requiring major bone surgery, was performed on an "out-patient" basis, i. e., that the patient was not hospitalized and (4) the failure of Miss Fee to claim hospital benefits to which she would have been entitled under the Blue Cross indemnity provided by the contract.

The testimony of Mr. Fred Martin, claims coordinator for complainant, shows that from 600 to 650 claims are processed daily by complainant; that this work is done by employees without medical training; that one group of clerks process claims under Blue Shield and another group working in a different department claims under Blue Cross; that in checking a claim under Blue Shield which covers only a claim for reimbursement for the charge made by the physician for an operation there would be no need to check hospitalization and that the basis for allowing claims was the accompanying physician's statement that the work had been performed and the fee charged. Mr. Martin admitted that if all the claims had been examined at one time it would have appeared to a lay employee that too many claims for bone injuries were being made under this policy and that it would have been unusual for some of the opera-

tions to have been performed on an out-patient basis. He further testified that complainant always required that certificates be filled out by the doctor and when it appeared that a claim had been filled out by a dotcor's secretary it was always returned.

In judging complainant's failure to detect the fraud, we must remember that hindsights are always better than foresights and bear in mind that each claim was considered separately. In the absence of some material omission or circumstance appearing on the face of the claim indicating that the policy holder had not incurred the medical expense for which claim was being made we can not see that complainant was obligated to check its file to see how many other claims had been filed. As to the failure to attach a receipt by the doctor showing payment of the claim, we find nothing in the contract requiring claims to be substantiated by a receipt of the doctor. The reference to certain of the operations having been performed on an "out-patient" basis consisted of nothing more than an "X" in the printed form. The reference to receipts being attached was also a part of the printed form which contemplated payment to the policy holder rather than to the doctor.

The certificate of the doctor performing the operation required of the claimant would be of little value if it could not be accepted as true. Here was a certificate couched in medical terminology signed by a doctor showing that a certain operation had been performed on a certain date and the charge made by the doctor. Considering the rapididity with which claims were processed and assuming the clerk noticed that the "X" was under the out-patient column rather than the in-patient, should

complainant have submitted the claim to a doctor to see whether such an operation could have been performed as the doctor said it was on an "out-patient" basis? We think not. No doubt it was to relieve itself of the burden of making such an investigation that complainant required a certificate from the operating physician.

The representation upon which complainant acted was a matter peculiarly within the knowledge of an operating surgeon concerning matters of a technical nature about which a doctor would have superior knowledge. The material question was whether the expense had been incurred by the claimant. Claimant acted on a solemn and positive statement purportedly made by a physician in good standing that an operation had been performed and the amount charged for the doctor's services. We can not see that ordinary care, under all the circumstances, required it to make an independent investigation of the circumstances.

"The courts seem to be well agreed that where the means of obtaining information are not equal, the positive representation of the person who is supposed to possess and does possess peculiar or superior means of information may be relied on and under such circumstances investigation may be dispensed with." 23 Am. Jur. 905, 951, Fraud and Deceit, Section 146.

For the reasons indicated we conclude that the learned Chancellor erred in dismissing the bill. A decree will be rendered here for $2235.00 and costs. In our discretion, interest will be disallowed.

Hale and Cooper, JJ., concur.