Alex Jack Tartera and Thersa D. Tartera, Plaintiffs in Error,

*v.*

Frank P. Palumbo, Defendant in Error.

453 S.W.2d 780.

(*Jackson*, April Term, 1970.)

Opinion filed May 4, 1970.

C. THOMAS CATES, Memphis, and BURCH, PORTER & JOHNSON, Memphis, of counsel, for plaintiffs in error.

JAMES C. WARNER, Memphis, MARTIN, TATE, MORROW & MARSTON, Memphis, of counsel, for defendant in error.

MR. CHIEF JUSTICE DYER delivered the opinion of the Court.

This case comes to this Court from the action of the trial judge in sustaining a demurrer to the declaration dismissing the case. The issue presented is whether the facts alleged in the declaration will sustain a cause of action in tort where the plaintiff is not in privity with the defendant, the tort being based on negligent misrepresentation as opposed to fraudulent misrepresentation. In this opinion we will refer to the parties as they were

in the trial court; that is, Alex Jack Tartera and wife, Thersa D. Tartera, as plaintiffs, and Frank P. Palumbo as defendant.

Plaintiffs owned and farmed about twenty acres of land in Shelby County, Tennessee, upon which land their home was located. On July 5, 1966, plaintiffs, by written contract, granted to the J. Gibson Riley Construction Company (hereafter referred to as Riley) an option to lease seven and one-half acres of this land and an option to purchase the remaining twelve and one-half acres. Riley could exercise either or both of these options, but in the event only the option to purchase was exercised, Riley was obligated to pay plaintiffs a stated sum of money as a penalty. The contract provided plaintiffs could remove any building from any land purchased or leased. It is alleged at the time the contract was executed it was understood between the parties, that in the event Riley exercised only the option to purchase the twelve and one-half acres, said acreage would not include the lot of land upon which plaintiffs' residence was located.

Pursuant to its contractual obligation to have the property rezoned, Riley employed and paid defendant to survey this property and prepare a subdivision plat. It is alleged Riley informed defendant this survey and plat would be used in any purchase of this property under the option and that the residence of plaintiffs was not to be included in the twelve and one-half acres optioned to be purchased. Defendant in accord with his employment by Riley completed his work.

After defendant completed his survey, plaintiffs noticed a survey stake in the center of their driveway and by sighting on same came to the conclusion, under this

survey, the western boundary of the twelve and one-half acre tract might run through the center of their residence. Plaintiffs then went to the office of their attorney, who had been furnished a copy of defendant's survey and plat. Upon examining this survey plaintiffs and their attorney came to the conclusion their residence would be outside the boundaries of this twelve and one-half acre tract as designated by defendant's survey, but their attorney placed a telephone call to defendant inquiring of this matter. Defendant, in response to the question as to the location of the residence upon his survey, assured plaintiffs their residence was not inside the boundaries of the twelve and one-half acres, but was, in fact, about twenty feet west of the western boundary of said tract. Upon this assurance by defendant, plaintiffs again extended the option contract dated July 5, 1966.

Riley exercised the option to purchase the twelve and one-half acre tract but did not exercise the option to lease the seven and one-half acres. On February 23, 1968, in accord with the option contract, plaintiffs conveyed the twelve and one-half acres by warranty deed to Riley's designee. The description of the twelve and one-half acres conveyed by this deed was taken from the survey and plat prepared by defendant.

On February 26, 1968, construction crews began to uproot trees in the yeard of plaintiffs' residence. Upon protest by plaintiffs the work was stopped until it was determined the western boundary of the twelve and one-half acre tract intersected plaintiffs' residence at about the center of same. Plaintiffs were required to remove the house and for this and other incidental damages suit was filed against defendant.

Plaintiffs insist this action can be maintained under authority of *Dickle v. Abstract Company,* 89 Tenn. 431, 14 S.W. 896 (1890); *Denton v. Nashville Title Company,* 112 Tenn. 320, 79 S.W. 799 (1903); and *Equitable Building and Loan Association v. Bank of Commerce & Trust Company,* 118 Tenn. 678, 102 S.W. 901 (1907). In the *Dickle* case this Court stated "the allegations of the bill clearly make a privity of contract between the purchasers (plaintiffs) and the defendant (Abstract Company)." In the *Denton* case this Court found there was privity between the parties although recovery was denied on other grounds. In the *Equitable* case this Court denied recovery because there was no privity between the parties. These three cases hold the defendants, in the preparation of the abstracts, owed a duty to the plaintiffs under the contract of employment to act with care. The point is where there was privity, recovery was allowed, and where there was not privity, recovery was denied.

In the case at bar the declaration does not allege plaintiffs had any contract with the defendant. In fact, the declaration alleges to the contrary. If this declaration is considered as an action resulting from the negligent performance of a contract, then the trial judge was correct in sustaining the demurrer.

This bring us to the question of whether this suit can be maintained as an action for deceit, which is a tort action not requiring privity. Search along this line usually begins with the case of *Derry v. Peek,* 14 App.Cas. 337, 58 L.J.Ch. 864 (1889). In this case the court said:

First, in order to sustain an action of deceit, there must be proof of fraud, and nothing short of that will suffice. Secondly, fraud is proved when it is shown that

a false representation has been made (1) knowingly, or (2) without belief in its truth, or (3) recklessly, careless whether it be true or false. Although I have treated the second and third as distinct cases, I think the third is but an instance of the second or one who makes a statement under such circumstances can have no real belief in the truth of what he states. To prevent a false statement being fraudulent, there must, I think, always be an honest belief in its truth. And this probably covers the whole ground; for one who knowingly alleges that which is false has obviously no such honest belief.

In *Shwab v. Walters,* 147 Tenn. 638, 251 S.W. 42 (1922), this Court said:

This court has more than once in unreported cases approved and followed the rules laid down by Lord Herschell in *Derry v. Peek,* L.R. 14 App.Cas. 337 as follows: [Here follows the language above quoted from *Derry v. Peek*].

In *Crouch v. Gray,* 154 Tenn. 521, 290 S.W. 391, 50 A.L.R. 1023 (1926), this Court stated:

All actionable wrongs are either torts, contracts, or crimes. If this demand may be held to be in tort, it must be based on deceit—fraudulent misrepresentation—and it is well settled that the element of will or intent is essential to such a charge.

There has been criticism by text writers and a few courts that though many jurisdictions, including Tennessee, give lip service to *Derry v. Peek,* supra, they, in effect, have bypassed the holding of this case. This criticism is stated by Prosser, Torts sec. 88, p. 537, in the following language:

> The majority [of the American courts] purport to accept it as sound law, but a great many of them have devised various more or less ingenious fictions and formulae which permits them to render lip service to *Derry v. Peek,* and yet allow recovery in deceit for misrepresentation which falls short of actual intent to deceive. If one looks to the facts of the cases rather than the formulae adopted by the courts, it is by no means clear that *Derry v. Peek* is supported by the weight of American authority.

See also Prosser, Misrepresentation and Third Persons, 19 Vand.L.Rev. 231, at 249 (1966).

Among the Tennessee cases (not necessarily cited by counsel in the case at bar) by which is has been claimed we have at least diluted the holding in *Derry v. Peek,* supra, are the following: *Southern v. Cowan Stone Co.,* 188 Tenn. 576, 221 S.W.2d 809 (1949); *State ex rel. Harbin v. Dunn,* 39 Tenn.App. 190, 282 S.W.2d 203 (1955); *Jackson v. B. Lowenstein & Bros. Inc.,* 175 Tenn. 535, 136 S.W.2d 495 (1940); *Justus v. Wood,* 209 Tenn. 55, 348 S.W.2d 332, 349 S.W.2d 793 (1961); *Figuers v. Fly,* 137 Tenn. 358, 193 S.W. 117 (1916); *Lowe v. Wright,* 40 Tenn.App. 525, 292 S.W.2d 413 (1956); *Tennessee Hospital Service Ass'n v. Strang,* 49 Tenn.App. 263, 354 S.W.2d 488 (1961); *Dickle v. Abstract Co.,* supra; *Denton v. Nashville Title Co.,* supra; *Equitable Building & Loan Ass'n v. Bank of Commerce & Trust Co.,* supra.

We have examined the above cited Tennessee cases and it would, without profit, unduly lengthen this opinion to go into the facts of each of them. The facts of these cases are such they cannot be considered a rejection of *Derry v. Peek,* supra, adopted in this jurisdiction in *Shwab v. Walters,* supra.

In the case at bar there are no allegations of fraud and this action cannot be maintained as an action for deceit.

Plaintiffs cite the case of *Howell v. Betts,* 211 Tenn. 134, 362 S.W.2d 924 (1962). This suit was a tort action for negligent misrepresentation, absent privity, against the defendant surveyor alleging damages to plaintiff resulting from an error made by the defendant in surveying a tract of land, the plaintiff having relied on the survey in the purchase of the land. The case in the trial court was dismissed upon demurrer for lack of privity.

In *Howell v. Betts,* supra, this Court cited *MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050 (1916); *Boyd v. Coca Cola Bottling Works,* 132 Tenn. 23, 177 S.W. 80 (1914); and *Dunn v. Ralston Purina Company,* 38 Tenn.App. 229, 272 S.W.2d 479 (1954). The gist of these three cited cases germane to *Howell v. Betts,* supra, is that they indicate the assault by the courts upon the citadel of privity. These three cases are "products liability cases" which by analogy support the argument that privity is not an absolute requirement in a negligent misrepresentation case; yet, they are not a direct holding that such is the case.

The holding of this Court in *Howell v. Betts,* supra, is that admitting under demurrer the negligence of the defendant surveyor, the damages suffered by the plaintiff were unforseeable by the defendant due in this case to the lapse of time. In support of this holding the Court cited *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441, 74 A.L.R. 1139 (1931).

In *Ultramares v. Touche,* supra, the defendant was employed by Fred Stein & Co. to prepare and certify a balance sheet exhibiting the finanical condition of its

business. The defendant was aware Stein required extensive credit in its business operations and borrowed large sums of money from banks and other lenders. The defendant also knew its balance sheet when certified would be used by Stein in its borrowing operations, but did not know the names or numbers of possible lenders to whom Stein would exhibit the balance sheet. The defendant was negligent in the preparation of the balance sheet which reflected Stein was solvent when, in fact, Stein was insolvent. Stein exhibited this balance sheet to plaintiff Ultramares and, relying upon the balance sheet, plaintiff made loans to Stein which became losses to plaintiff. Plaintiff sued defendant for negligent misrepresentation. The court relieved defendant of liability on the ground to hold otherwise would expose defendant to liability indeterminate as to amount, time, class or number. This case does support the principle enunciated in *Howell v. Betts,* supra, that there is no liability for negligent misrepresentation where the damages are not reasonably foreseeable by the alleged tort-feasor.

We do not think the case at bar is controlled by the holding in *Howell v. Betts,* supra, and *Ultramares v. Touche,* supra. In the case at bar it is alleged defendant knew the plaintiffs owned the land surveyed and if there be error as to the location of the plaintiffs' residence, the plaintiffs would suffer damages and only the plaintiffs.

The facts in the case at bar are similar to the facts in *Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275 (1922). In the *Glanzer* case plaintiff purchased beans from a seller to be paid for in accord with weight sheets certified by public weighers. The seller requested and paid defendants, as public weighers, to weigh the beans furnishing the seller and plaintiff with copies of the weights.

Plaintiff paid for the beans in accord with defendant's weight sheet, which was later shown to be in error resulting in a loss to plaintiff. Plaintiff sued defendant for the amount of its loss basing its claim on defendant's negligence. The Court said:

> The plaintiff's use of the certificates was not an indirect or collateral consequence of the action of the weighers. It was a consequence which, to the weighers' knowledge, was the end and aim of the transaction. Bech, Van Siclen & Co. (seller) ordered, but Glanzer Brothers (plaintiff) were to use. The defendants held themselves out to the public as skilled and careful in their calling. They knew that the beans had been sold, and that on the faith of their certificate payment would be made. They sent a copy to the plaintiff for the very purpose of inducing action. All this they admit. In such circumstances, assumption of the task of weighing was the assumption of a duty to weigh carefully for the benefit of all whose conduct was to be governed.

American Law Institute, Restatement of Torts (Second), sec. 552, Tent. Draft No. 11, April 15, 1965, states the law in the following language:

> (1) One who, in the course of his business, profession or employment, or a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon such information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

> (2) The liability stated in subsection (1) is limited to loss suffered

(a) By the person or one of the persons for whose benefit and guidance he knows the information to be intended; and

(b) Through reliance upon it in a transaction in which it is intended to influence his conduct.

■ In the case at bar it is alleged defendant made this survey in the course of its business for a price. That defendant had full knowledge the survey was to be used, if used at all, by both the plaintiffs and Riley in the purchase or lease of plaintiffs' land under this option and furnished a copy of the survey to plaintiffs' counsel for the purpose of plaintiffs acting thereon. In this situation liability follows under the Restatement, view above quoted. A decision more recent than that of *Glanzer v. Shepard,* supra, which clearly supports the Restatement view is *M. Miller Co. v. Central Contra Costa Sanitary District,* 198 Cal.App.2d 305, 18 Cal.Rptr. 13 (1961). That decision is discussed in Prosser, Misrepresentation and Third Persons, 19 Vand.L.Rev. 232, at pages 249-250 (1961), and is there regarded as "more likely to be followed" than the decision in *Texas Tunneling Co. v. Chattanooga,* 329 F.2d 402 (6th Cir.1964), which involved comparable facts.

■ We hold if the defendant chose to act in response to the location of the residence on this survey, then under the circumstances alleged in this declaration he owed a duty to plaintiffs to act with care.

We have noted in our research in actions for negligent misrepresentation the courts have had difficulty in determining the nature of the action and the procedure to be used. There is an excellent article on this subject in Harvard Law Review, Vol. 42, p. 733 (April 1929), en-

titled "Misrepresentation as Deceit, Negligence, or Warranty." We view the action as one in tort determined by the general principles of the law of negligence subject to the normal defenses to such action. While the authorities on the situation presented in this case are meager, we consider that the view expressed in Restatement is sound on principle, and in accord with clear dicta in *Howell v. Betts,* supra.

Consequently, the judgment of the trial court sustaining the defendant's demurrer must be reversed, and plaintiffs will be given an opportunity to prove their allegations, which are sufficient to establish a case in the absence of contributory fault, adequate disclaimers, or other defenses.

McCANLESS, JUSTICE, and JENKINS and BOZEMAN, SPECIAL JUSTICES, concur.

CRESON, JUSTICE, separate concurring opinion.

MR. JUSTICE CRESON, (concurring).

While I fully agree with the result reached by the majority in the instant case, I can go no farther. The rationale of the majority opinion seems to be that the declaration, met by demurrer, states a cause of action for something designated as "negligent misrepresentation". For a very long time, misrepresentation has, in this State, constituted a significant part of the law of (1) rescission, (2) reformation, and (3) the cause of action for fraud and deceit. However, I cannot accept the idea that there has ever existed, does now exist, or should ever exist, in Tennessee, any action for alleged "negligent misrepresentation". This is no more than a vacuous phrase, ap-

parently of academic origin. The words are, in fact, inherently repugnant.

On the other hand, the declaration in the instant case does allege a maintainable cause of action against a surveyor who had contractually assumed the obligation to use reasonable and ordinary care in the performance of his duties. It is equally clear that this surveyor was abundantly aware of the identity of the parties, including this plaintiff, who would inevitably suffer by reason of his negligent performance of the duty assumed.