ASSOCIATION LIFE INSURANCE COMPANY

v.

Raymond L. JENKINS and Hugh R. Startup, Jr.

No. 3:89–0871.

United States District Court, M.D. Tennessee, Nashville Division.

May 22, 1992.

Lela M. Hollabaugh, Randall Chadwell Ferguson, Manier, Herod, Hollabaugh & Smith, Nashville, Tenn., for plaintiff.

Roger Tyler May, Nashville, Tenn., for defendant.

## MEMORANDUM

JOHN T. NIXON, Chief Judge.

Having held a trial without a jury in the above styled action, the Court makes the following findings of fact and conclusions of law.[1]

### I. FACTS

Raymond L. Jenkins is the president of Murfreesboro Truck Sales (Murfreesboro Truck Sales), Inc. His grandson, Hugh R. Startup, Jr., began working for Murfreesboro Truck Sales in 1981 at the age of fourteen. At the times pertinent to this

---

1. At the conclusion of the plaintiff's proof at trial, the defendants made a motion, under Fed. R.Civ.P. 41(b), for involuntary dismissal. At that time, the Court took the motion under advisement. Since the Court does not find that the plaintiff's evidence was insufficient to support their claim as a matter of law, but rather finds that this case turns on equitable principles applied to the facts of this case, the Court denies the defendants' Rule 41(b) motion.

case, Murfreesboro Truck Sales was an International Harvester dealer and provided insurance to its employees through Association Life Insurance Company (Association Life). In 1983, Startup developed cancer of the pineal gland. Between 1983 and 1985, Startup stopped working in order to undergo cancer treatment in various places across the country. In 1985, Startup resumed working at Murfreesboro Truck Sales with responsibilities such as floor sweeping and telephone answering.

On April 20, 1987, Murfreesboro Truck Sales closed its doors at its original place of business. That location was then leased to a plumbing supply company. At the same time, Murfreesboro Truck Sales moved into a warehouse nearby that had been constructed for the purpose of housing the parts that could not be returned to the dealers from which they were purchased. A sign was erected at the warehouse that indicated the new location of Murfreesboro Truck Sales. Since then, Jenkins has sold parts out of the warehouse in a long process of liquidating his business. Although Murfreesboro Truck Sales' corporate charter was administratively dissolved on September 15, 1989, Jenkins has continued to sell parts as a sole proprietorship.

In March, 1988, Association Life received a disability claim form signed by Startup. An Association Life employee noted that the form did not contain information about when the disability originated. As a matter of company procedure, the employee undertook to call the doctor and the employer in order to determine the disability date. The doctor indicated that Startup's disability date was March 15, 1987. When the Association Life employee called the employer listed on the partial disability claim form, Murfreesboro Truck Sales, a woman answered the telephone and informed the employee that Murfreesboro Truck Sales had been out of business for months. This prompted further inquiry by Association Life, including an investigation by Equifax to determine whether Murfreesboro Truck Sales was still in business. The Equifax investigator produced a deposition of Jenkins taken in a state court action in which Jenkins testified that he had closed the doors of Murfreesboro Truck Sales on March 15, 1987.

After receiving the Equifax report, Association Life notified Murfreesboro Truck Sales that its group insurance was terminated retroactively as of March 31, 1987, since that was the last day of the month which Association Life determined Murfreesboro Truck Sales went out of business. Association Life requested that the benefits paid after that date be returned. Neither Jenkins or Startup responded. Shortly thereafter, Association Life filed this lawsuit which seeks recovery of the benefits paid after March 31, 1987, totalling approximately $59,473.30, and, as a basis for recovery, alleges that the benefits were mistakenly paid due to the defendants' fraudulent misrepresentations regarding Startup's eligibility for benefits and Murfreesboro Truck Sales' eligibility for group insurance coverage.

The insurance policy, under which Startup's benefits were paid, states in part:

*All of Your coverage will terminate on* the earliest of: a) the last day of the month for which the premium is paid for Your coverage; or b) the last day of the month in which You cease to be an active full-time Employee; or c) the date the Policy terminates; or d) *the date the coverage of the Participating Employer Unit and its Employees terminates.*

*However, coverage will continue during: a) Total Disability;* and b) layoff or approved leave of absence; until premium payments for the Insured are discontinued by the Employer or until expiration of the Maximum Continuation Period or until the date the Policy terminates, or *until the date the particular coverage of the Participating Employer Unit terminates,* whichever is earliest.

The policy defines an employee as a person actively working for the employer on a full time basis, at least thirty hours per week, forty-eight weeks per year.

At trial, the plaintiff, Association Life, attempted to prove that no employee of Murfreesboro Truck Sales worked the requisite thirty hours a week, forty-eight

weeks a year after April, 1987, and therefore, Murfreesboro Truck Sales, was not eligible for group insurance coverage.[2] The plaintiff presented evidence which established that the company made only seven invoices, six bank deposit slips and forty-four receipts after March 31, 1987. Association Life introduced exhibits such as the deposition from the state court action in which Jenkins testified that Murfreesboro Truck Sales had closed its doors, a letter dated June 11, 1987 from Jenkins to the Tennessee Department of Revenue advising that Murfreesboro Truck Sales desired to surrender its tax number, and Murfreesboro Truck Sales' final Business Tax Act and License and Tax Report that was submitted on August 3, 1987 and indicated a final reporting date of March 31, 1987.

Association Life also presented checks, drawn on Murfreesboro Truck Sales' account and Jenkins' personal account, showing that Murfreesboro Truck Sales continued to pay premiums after March 31, 1987. The plaintiff admitted, however, that none of the information on the checks was incorrect. The plaintiff's witnesses testified that the premium payments go straight to the bank and Association Life employees never see the payments.

Additionally, the plaintiff pointed out that several of the insurance claim forms signed by Startup after March 31, 1987 indicated, by a check in a box, that he was "employed and covered by [the] employer health plan." However, most of the claim forms introduced at trial, of which there were over sixty, were incomplete in that over half the questions on the forms were left unanswered, and the space provided for the patient's signature contained only the typed phrase "patient's request for payment on file." The plaintiff's witnesses also testified that, when Association Life receives a claim form, a claim examiner reviews the form and decides whether to pay, pend, or deny the claim based on the form.

## II. ANALYSIS

 Very few recent cases exist in Tennessee on the issues before the Court today. Nevertheless, it is well established that in Tennessee, as elsewhere, insurance companies may sue to recover benefit payments made due to mistake or fraud. *See Aetna Casualty and Surety Co. v. Parton*, 609 S.W.2d 518, 518 (Tenn.Ct.App. 1980) (arson); *Tennessee Hospital Service Association v. Strang*, 49 Tenn.App. 263, 354 S.W.2d 488, 491 (1962) (physician fraud); *see also* 18 George J. Couch, Couch Cyclopedia of Insurance Law § 74:156 (2d ed. rev. vol. 1983). Absent fraud, suits for recovery of insurance benefit payments are suits under implied contracts. *Strader v. Aetna Life Insurance Co.*, 181 Tenn. 444, 181 S.W.2d 622, 625 (1944).

 Implied contracts differ from express contracts in that the former are inferred by a court from conduct, while the latter are expressed by the parties in words. *V.L. Nicholson Co. v. Transcon Investment and Financial Ltd.*, 595 S.W.2d 474, 482 (Tenn.1980). The Tennessee Supreme Court has observed that courts employ the terms "contracts implied in law," "unjust enrichment," "quasi-contract," and "quantum meruit" interchangeably. *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 154 (1966). In the past, such actions were also known as actions in assumpsit for money had and received. *United States Fidelity & Guaranty Insurance Co. v. Hartsook*, 487 S.W.2d 649, 651 (Tenn.1972).

 Contracts implied in law, or quasi-contracts, are obligations imposed by law without assent of the parties bound, on the ground that they are dictated by reason and justice and are allowed to be enforced

**2.** The plaintiff also seemed to attempt to prove, among other things, that Startup was not an eligible employee under the insurance plan by showing that his tax returns filed in 1985, 1986 and 1987 state a level of income which, if divided by the minimum wage, yields a number of hours per year that falls far short of the minimum weeks and hours per week required under the policy. Because, as described below, the Court does not find the express insurance contract terms to control the disposition of this action, this and the plaintiff's other theories are only alluded to briefly.

by actions ex contractu. *Weatherly v. American Agricultural Chemical Co.*, 16 Tenn.App. 613, 65 S.W.2d 592, 598 (1934). Thus, courts apply equitable principles in deciding cases under these theories. *See Lawler v. Zapletal*, 679 S.W.2d 950, 955 (Tenn.Ct.App.1984).

 In the instant case, Association Life's complaint alleges fraud and negligent misrepresentation as bases for recovery. Although not exactly textually congruent with the applicable law in Tennessee, the plaintiff's assertions, if proved, could allow recovery, because, as discussed above, insurance benefits paid because of fraud, or mistake in certain circumstances, are recoverable. However, after reviewing the evidence, the Court holds, under equitable principles of contracts implied in law, that the plaintiff is not entitled to recover the insurance benefits paid.

To begin with, the plaintiff failed to prove that the defendants acted fraudulently. In Tennessee, to succeed on an action for fraudulent misrepresentation, a plaintiff must prove that the defendant made a false representation about an existing or past material fact, that it was made knowingly without belief in its truth, or recklessly, and that the plaintiff suffered injury as a result of relying on the misrepresentation. *Graham v. First American National Bank*, 594 S.W.2d 723, 725–26 (Tenn.Ct.App.1980).

Here, Association Life failed to prove that either Jenkins or Startup made any knowing misrepresentation. The only misrepresentations that the defendants could have possibly made would involve the checked boxes on the claim forms that indicated that Startup was "employed and covered by [the] employer health plan." These boxes were only checked on a handful of the claim forms. No evidence presented at trial indicates that Startup knew the statement to be a misrepresentation. Startup had no knowledge of whether he was "employed" within the meaning of the insurance contract, and probably assumed that he was covered by the Murfreesboro Truck Sales plan.

Further, no evidence presented at trial even indicates that these boxes were checked by Startup or Jenkins. On a few claim forms on which the boxes were checked, Startup's signature appears in a box that states "I authorize the release of any medical information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below." On some of the claim forms that have checked employment boxes, Startup's signature does not appear. Instead, only the typed phrase "patient's request for payment on file" appears. Although no evidence was presented at trial regarding this fact, most likely, whoever gave Startup the document to sign, when it was given, checked the box. Startup's signature in the other space only authorizes the release of medical information and requests payment. It does not purport to represent his confirmation of the truth of any other information on the document. Therefore, Association Life has not shown that Startup or Jenkins knowingly made any misrepresentation.

The other theory upon which Association Life could succeed in this action is that it mistakenly paid out benefits and is entitled to recovery under unjust enrichment. This seems to be closer to the theory on which the plaintiff focused at trial. Association Life attempted to prove that no employee of Murfreesboro Truck Sales worked the requisite number of hours under the insurance contract after April, 1987, and therefore Murfreesboro Truck Sales was not eligible for group insurance coverage under the insurance contract as an employer because it had no employees. Although the Court is persuaded by the evidence that Association Life probably paid the benefits out by mistake, the equitable principles that control this action still prevent Association Life's recovery.

The Tennessee cases closest to the one at bar happen to be very old. Nonetheless, their law remains valid under stare decisis and as it is consistent with that of other jurisdictions. In 1852, the Tennessee Supreme Court held, in a case for recovery of insurance payments made under mistake of

fact, that an insurance company could recover such payments. *Guild v. Baldridge,* 2 Swan 295, 32 Tenn. 210, 216 (1852). The court qualified its holding, however, aptly stating: "We do not, of course, mean to say that the plaintiff, in a case of payment without knowledge of all the material facts, may not be repelled upon other grounds, involving different principles; we think he may—as for instance, upon the ground of injury or injustice to the defendant in a particular case." *Id.* Similarly, fifty-nine years later, the Tennessee Supreme Court again applied equitable principles in holding that money had and received under a mistake of law, as opposed to mistake of fact, cannot be recovered unless such circumstances exist that

> it would be unconscionable for the party who obtained the advantage in such transaction or settlement to retain that advantage, and *e converso,* although there was a clear mistake of law, *yet if the party benefiting by the transaction may retain the advantage in good conscience, neither a court of law nor equity will give relief to the complaining party.*

*Leach v. Cowan,* 125 Tenn. 182, 207, 140 S.W. 1070 (1911) (emphasis added).

This result is consistent with the law in other jurisdictions. A federal district court in Arkansas, for instance, held, under Arkansas law, that an insurance company could not recover benefits paid under a mistake of fact when the defendant's had changed their position in reliance on the paid benefits. *Woolsey v. Nationwide Insurance, Co.,* 697 F.Supp. 1053, 1056–57 (W.D.Ark.1988). Other federal courts have made similar holdings that applied equitable principles in other jurisdictions. *See Glover v. Metropolitan Life Insurance Co.,* 664 F.2d 1101 (8th Cir.1981) ("The Missouri courts, when weighing the equities of a case, lay great emphasis on whether or not the payee has relied on retention of the payment received."); *Myers v. Fidelity & Casualty Co. of New York,* 759 F.2d 1542, 1548 (11th Cir.1985) (citing 13 S. Williston & W. Jaeger, A Treatise on the Law of Contracts § 1595 at 584 and 586 (1970)); *Terra Nova Insurance*

*Co. v. Associates Commercial Corp.,* 697 F.Supp. 1048, 1052 (E.D.Wisc.1988) ("In reliance on the insurance settlement, [the defendant] changed its position to its detriment, and restitution is therefore inappropriate.").

Here, the defendants would suffer great injury or injustice if the Court allowed Association Life to recover the money it paid under mistake of fact. The defendants relied on the benefit payments in undergoing the medical treatment. Startup changed his position by undergoing medical treatment that he may not have if he could not have relied on the benefits. Also, since those payments have been paid to the physicians and medical suppliers and are not in the hands of the defendants, the nature of the benefits received by the defendants is not a windfall. Under the above principles, the Court holds that the defendants "may retain the advantage in good conscience." Therefore, the Court declines to allow the plaintiff, Association Life, to recover its payments made for the benefit of Startup.

### III. CONCLUSION

For the reasons stated above, the Court ENTERS judgment in favor of the defendants. An order consistent with the above reasoning and result will be entered simultaneously.