IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 26, 2001 Session

## VOLUNTEER INVESTMENTS, INC. v. FELLER BROWN REALTY & AUCTION COMPANY, ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 98-1659-I    Irvin H. Kilcrease, Jr., Chancellor

### No. M2000-02644-COA-R3-CV - Filed August 21, 2001

A developer who purchased three real estate tracts at auction filed suit to rescind the purchase on the grounds of misrepresentation or mutual mistake. The trial court dismissed his complaint. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Todd E. Panther, Nashville, Tennessee, for the appellant, Volunteer Investments, Inc.

J. Russell Farrar and P. Brocklin Parks, Nashville, Tennessee, for the appellee, Feller Brown Realty & Auction Company.

D. Scott Parsley and Joshua G. Strickland, Nashville, Tennessee, for the appellee, James Bryan Lewis.

### OPINION

### I. AN AUCTION OF LAND

Auctioneer Feller Brown advertised an auction of three adjoining properties in Davidson County, to take place on November 22, 1997. His handbill announced, "We Have The Tract to Build That Country Estate Home That You Have Always Dreamed Of." The handbill also stated that the areas of the three tracts were 5.58 acres, 7.86 acres, and 10.29 acres respectively, that they all included an "easy flowing creek" and that the tracts were being tested for soil percolation, with the results to be available on the day of sale.

Since sewer service did not reach the properties, a building permit could not be obtained for construction of homes on them unless the Metropolitan Government determined that they could accommodate a septic system. The steps required for approval of a septic system are described in some detail in the record of this case, and include the submission of a site plan and soil-test results to the Public Works Department, followed by an application to the Health Department.

Prior to the auction, Mr. Brown announced that the tracts were being sold "as is" and,

". . . we're selling this property subject to being in the flood plain. Anytime you have a piece of property that's adjacent to a creek or a spring or a river or whatever, we always sell it being subject to being in a flood plain. We don't know whether it is or not . . . ."

He also said,

". . . Phil Dickerson, the soil scientist, has been out, he has checked all of the tracts here and he will assure any buyer that whoever buys a tract of land that it will perc for a three bedroom minimum, possibly a four bedroom . . . they have been soil tested and they will be recorded with the Health Department."

Daryl Adler, President and Owner of Volunteer Investments, Inc., submitted a winning bid of $93,000 for all three properties. A contract of sale between Volunteer Investments and property owner James Bryan Lewis recited a down payment of $18,600, called for a closing within 30 days, and stipulated that the property was selling as is, and "subject to announcements made prior to sale." The parties closed on December 10, 1997, with Volunteer Investments executing a promissory note to Mr. Lewis for the $74,400 balance of the purchase price, and taking title on that date.

Mr. Adler subsequently requested that the Metro Health Department issue septic tank permits. The Health Department responded that it possessed no information concerning the properties. Mr. Adler immediately notified Feller Brown of the discrepancy. The auctioneer promised to remedy the situation, and promptly told Philip Dickerson to either submit or resubmit the soil tests.

The Health Department acknowledged receiving the required documentation on February 6, 1998. However, no further action followed on the part of the Department because a required design fee had not been paid, nor had a scaled plot plan showing the placement of the house, driveway and waterline been submitted.

At some point, Mr. Adler also learned that the three properties were considered to be in the flood plain. He never made any payments on his promissory note (Mr. Lewis subsequently

foreclosed).  Rather than take any of the steps described above for obtaining a permit,  Mr. Adler chose instead to ask the seller to rescind the contract.[1]

On April 16, 1998, Mr. Adler's attorney sent a letter to Mr. Brown and Mr. Lewis threatening legal action, and requesting the return of the down payment, as well as a full release from the promissory note and deed of trust.  When these were not forthcoming, Volunteer Investments filed a Complaint in Chancery Court.

## II. PROCEEDINGS IN THE TRIAL COURT

The Complaint, filed on May 29, 1998, named Feller Brown Realty & Auction Co., and James Bryan Lewis as defendants.  The plaintiff asked for recission of the land purchase on the basis of either fraud or mutual mistake, and for damages.  The complaint also alleged that the defendants had deliberately engaged in unfair or deceptive acts in violation of the Tennessee Consumer Protection Act, Tenn. Code. Ann. § 47-18-104, and that the plaintiff was therefore entitled to treble damages and attorney fees.

The case came to trial on June 28, 2000.  Mr. Adler, Mr. Brown and Mr. Lewis all testified, as did Philip Dickerson, the surveyor who prepared the survey of the three properties, and employees of the Metro Public Works and Health Departments.  At the close of the plaintiff's proof, Mr. Lewis moved the court to dismiss the Tennessee Consumer Protection Act claim against him.  The chancellor granted his motion, finding that the Act was inapplicable to Mr. Lewis, because he was not regularly engaged in the business of selling real estate.  At the conclusion of all the proof, the trial court took the matter under advisement.  He subsequently filed a Memorandum and Order dismissing the Complaint in its entirety.  This appeal followed.

## III. RECISSION

On appeal, Mr. Adler abandoned the claim that the defendants had engaged in intentional misrepresentation, but continued to argue that he was entitled to recission of the contract because of mutual mistake or because of negligent misrepresentation on the part of the defendants.  Both theories relied on the same allegations: that Feller Brown failed to disclose that the properties were in the flood plain,[2] and that he assured bidders that the soil tests would be recorded with the Health

---

[1] Mr. Adler argued at trial and on appeal that it was the duty of the seller to obtain the septic tank approvals. However, such approvals require a site plan that indicates the developer's intended placement of the residences.  We do not believe that the assurances Mr. Brown gave at auction as to the submission of soil tests to the Department and eventual approval of the sites for residences amounted to a promise that the seller would obtain the required permits for the buyer.

[2] The appellant admitted that Mr. Brown never said that the properties were not in the flood plain, but he argues that Mr. Brown could easily have ascertained the truth of the matter by making use of a database maintained by Metro Government.  The appellees responded that Mr. Adler, an experienced developer, could also have made use of the database, and could have chosen not to close if he did not wish to develop property in the flood plain.

Department prior to closing, though the Department did not acknowledge receiving the tests until almost two months after the closing.

The proof showed, however, that Mr. Brown publicly announced that the property was being sold subject to being in the flood plain. Mr. Adler admitted in deposition that he probably bid less for the property because he knew it was possible that it might be in the flood plain, although on the stand he testified that the purchase price was unaffected by that consideration. The proof also showed that when the auctioneer learned that the soil percolation tests had not been received by the Health Department as promised, he acted promptly to correct the situation, and there was no evidence of any damages arising from the delay.

The defendants concede that mutual mistake or misrepresentation may justify contract recission in an appropriate case. *See Isaacs v. Bokor*, 566 S.W.2d 532 (Tenn. 1978). They note, however, that recission is an extreme remedy, and not available as a matter of course. In the case of *Loveday v. Cate*, 854 S.W.2d 877, (Tenn. Ct. App. 1992) we stated (quoting 17A C.J.S. *Contracts* § 422(1), Right to Rescind in General, p.516) ". . . the general rule is that recission will not be permitted for a slight or casual breach of the contract, but only for such breaches as are so substantial and fundamental as to defeat the object of the parties in making the agreement." 854 S.W.2d at 879.

To meet this requirement, the appellant argues that he purchased the properties with the intention of building three-bedroom houses on them, and that they are of no value to him because they are totally unsuitable for that purpose. Mr. Brown conceded at trial that if Mr. Adler could prove that construction of three-bedroom homes is impossible on those properties, then recission would be an appropriate remedy.

The proof did not show, however that the properties were unsuitable for the homes that Mr. Adler wished to build. In fact, the evidence was to the contrary. Mr. Adler admitted that in the course of his career as a developer, he had successfully built at least three or four homes on Nashville lots that were in the flood plain, and that to do so it was only necessary to raise the house by one or two courses of blocks.

Further, Mr. Dickerson, a soil scientist with over sixteen years experience, testified that the soil on the subject properties qualified for the highest rating possible with regard to the percolation test, and he repeated on the stand his earlier opinion that each tract would percolate for three or four bedroom residences. Finally, Mr. Brown had decided to see if he himself could obtain the septic tank approvals. Three months prior to trial, he paid the design fees of about $200 for each tract, and asked Mr. Dickerson to submit site plans. The approvals were obtained the day before trial.

The appellant disputed the probative value of the septic tank approvals, noting that the site plan that was submitted implied construction of houses between 3 feet and 12 feet from the creek, and stating that the Codes Department would not issue a building permit for a house less than 25 feet from a creek, unless the builder obtained a variance. While this may be true, there was no evidence

that a variance could not be obtained, or that a site plan that conformed to the requirements of the Codes Department could not have been approved.

We note that Christopher Michie, a Health Department employee who works in its Division of Engineering Services, testified that it was likely that a suitable septic system could be constructed at an appropriate distance from the creek on each of the properties. In light of the size of these tracts, there would seem to be an abundance of choices as to where to situate a home.

It thus appears that Mr. Adler could probably have obtained a building permit if he had just followed through on the steps required for septic system approval. It is unclear why he did not, but the evidence strongly suggests that he simply came to believe that his purchase was not as good a deal as he had initially thought, and he decided he would rather try to rescind the contract than to perform it.

## IV. NEGLIGENT MISREPRESENTATION

In *Tartera v. Palumbo*, 453 S.W.2d 780 (Tenn. 1970), our Supreme Court recognized the tort of negligent misrepresentation, quoting a definition of the tort from a draft by the American Law Institute that was later incorporated into the *Restatement of Torts (Second)* § 552:

> (1) One who, in the course of his business, profession or employment, or a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon such information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Another portion of the same section, § 552(B) states that misrepresentation may support a number of different remedies. However, no such remedy would be available in the absence of proof of pecuniary loss. Thus, even if we accept Mr. Adler's contention that Feller Brown was negligent in representing that the soil tests had been or would be submitted to and/or approved by the Health Department prior to closing, there is no evidence that the plaintiff suffered any monetary loss from the alleged misrepresentation, and thus there is no basis for an award of any kind.

## V.

The order of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to Volunteer Investments, Inc.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.