STATE *ex rel.* FIRST TRUST & SAVINGS BANK *v.* EASLEY *et al.*

(*Nashville,* December Term, 1939.)

Opinion filed May 18, 1940.

Horace B. Stout and Stout & Porter, all of Clarksville, for complainant.

Charles Willett, A. L. Dorsey, and John D. Sprouse, all of Springfield, for defendants.

Mr. Chief Justice Green delivered the opinion of the Court.

From a decree overruling their demurrer to the bill, the chancellor permitted the defendants to appeal.

The facts disclosed by the bill are these. Defendant Marjorie Easley was a notary public in Robertson County. She had duly qualified, taken the oath, and executed the bond prescribed by section 5898 of the Code. This suit is brought against her and the sureties on her official bond.

Defendant Marjorie Easley was approached by two men, neither of whom she knew. One of them introduced himself as McDaniel and then introduced his companion to her as Murphy. McDaniel represented that he was buying Murphy's farm and that Murphy had made a deed for the property and wished to acknowledge that

deed. Thereupon she took Murphy's acknowledgment attaching the usual notarial certificate that she was personally acquainted with Murphy, the within named or the aforesaid bargainor, and that he had duly acknowledged execution of the instrument.

Previous to this time McDaniel had approached the relator bank and informed an official of that bank that he intended to purchase Murphy's farm for cash; that he wanted to barrow $2,000 to complete the cash payment; and asked the banker if he would lend $2,000 on the security of the farm. The bank officer knew that the farm was for sale, knew it was valuable property, and told McDaniel that the bank would make the loan if the title was approved by its attorney. The title was examined and passed. Later McDaniel appeared with the deed supposed to have been executed by Murphy and acknowledged before Marjorie Easley. This instrument was examined and McDaniel then executed a mortgage upon the farm to secure the bank, and $2,000 was paid to him, the net proceeds of the loan.

Later it turned out that the deed of Murphy to McDaniel was a forgery, had been executed and acknowledged by an imposter representing himself to be Murphy. The true owner, Murphy, filed a bill for that purpose and by decree of the chancellor the fictitious deed was set aside and declared a cloud upon Murphy's title.

The point made by the demurrer is that the relator bank is not the immediate grantee of this fictitious deed, but a grantee of the grantee of that deed, and it is argued that there was no privity between the bank and the notary and for that reason the bank has no recourse against her or the sureties on her bond. In other words, that the obligation and duty of the notary public did not

extend beyond the immediate grantee of the fictitious instrument.

Counsel for both parties have presented this case as though the rights of those interested were to be determined by the common law.

Counsel for the defendants rely on *New England Bond and Mortgage Co.* v. *Brock,* 270 Mass., 107, 169 N. E., 803, 68 A. L. R., 371, and *Ware* v. *Brown,* Fed. Cas., No. 17170, 2 Bond, 267. These cases apparently hold that in the absence of a showing of a relationship existing between the parties, no recovery can be had for the giving of a false certificate by a notary public, since the law does not impose upon persons authorized to take acknowledgments a duty toward everyone who later relies upon the accuracy of the certificates.

Counsel for the relator insists that the weight of authority is to the contrary and that a notary public is liable at common law on his official bond for damage proximately occasioned to any person because of his reliance on a certificate to an acknowledgment of a deed or like paper in which a notary falsely certifies that the parties thereto are personally known to him and that they appeared and acknowledged the instrument. Some of these cases are *Hodges* v. *Mills,* 139 Miss., 347, 104 So., 165, Id., 149 Miss., 1, 115 So., 112, Id., 153 Miss., 49, 120 So., 760; *State ex rel. Kansas City Title & T. Co.* v. *Otto,* 220 Mo. App., 429, 276 S. W., 96; *State ex rel. and to use of Schaefer* v. *Korte* (Mo. App.), 13 S. W. (2d), 558; *Slapp* v. *Miller,* 56 Okl., 29, 156 P., 210, and other cases.

In this State, we think the matter is controlled by statute. Section 1833 of the Code provides, "Every official bond executed under this Code is obligatory on the principal and sureties thereon . . . (3) For the use and benefit of every person who is injured, as well

by any wrongful act committed under color of his office as by the failure to perform, or the improper or neglectful performance, of the duties imposed by law." This statutory provision does not require any interpretation. The statute means just what it says, as this court has recognized in *Fort* v. *Dixie Oil Co.*, 170 Tenn., 464, 95 S. W. (2d), 931; *Carr* v. *City of Knoxville*, 144 Tenn., 483, 234 S. W., 328, 19 A. L. R., 69, and other cases.

By reason of this statute any person injured by the false and negligent authentification of an instrument by a notary public has his action on the bond of that official for damages proximately resulting. The immediate parties to the instrument are not the sole beneficiaries of the statute.

The rights of the immediate grantee of a deed falsely authenticated are plainly declared in *Figuers* v. *Fly*, 137 Tenn., 358, 193 S. W., 117, 120. In that case the grantee of a deed, relying on the notary's certificate that it was executed by the party purporting to have done so, when in fact it was executed by an imposter, advanced money on a fictitious instrument and was granted a recovery against the notary public and sureties on its bond. The court there said: "The functions of a notary public are not to be lightly assumed; the amount of the bond required of him ($5,000) should indicate as much to one who proposes to perform the duties of the office. A certificate of acknowledgment is an act which must in the nature of things be relied on with confidence by men of business. Those buying or taking security by way of liens on real estate ought not to be required to look with suspicion on such a certificate or compelled to make proof of its recital as to the notary's personal acquaintance with the acknowledger."

Counsel undertake to assimilate the case before us to

the abstract cases, such as *Equitable Building & Loan Association* v. *Bank,* 118 Tenn., 678, 102 S. W., 901, 12 L. R. A. (N. S.), 449, 12 Ann. Cas., 407, in which it was held that an abstracter of title is liable only to the person to whom he furnishes the abstract and not to a third person to whom the customer furnishes the abstract unless there is a republication of the abstract to such third person.

As shown by the opinion in *Equitable Building & Loan Association* v. *Bank,* the conclusion reached is sustained by the weight of authority. However, in a number of States statutes have been enacted imposing liability for damage proximately caused by abstract errors to any person damaged by such errors. Under these statutes it is uniformly held that the abstracter was liable to the person injured whether he was the person who paid for the abstract or ordered the abstract. *Goldberg* v. *Sisseton Loan & Title Co.,* 24 S. D., 49, 123 N. W., 266, 140 Am. St. Rep., 775; *Washington County Abstract Co.* v. *Harris,* 48 Okl., 577, 149 P., 1075, and other cases cited in a Note, 34 A. L. R., 73.

We are of opinion that section 1833 of the Code and *Figuers* v. *Fly, supra,* control this case as above indicated.

Counsel for defendants submits that McDaniel could have had no recovery herein against the notary on account of the false certificate. That is true, but because McDaniel was a participant in the fraud perpetrated. It is then argued by counsel that since McDaniel could have no recovery, no person claiming under him could recover. This conclusion does not follow. The relator's claim against the notary comes from the statute, not through McDaniel.

For the reasons stated, the decree of the chancellor is affirmed.