# G. GILBERT LOWE et al. v. J. DOUGLAS WRIGHT, et al.—292 S. W. (2d) 413.

Middle Section. March 30, 1956.

Petition for Certiorari denied by Supreme Court, July 20, 1956.

526

J. L. Reynolds, Nashville, for G. Gilbert Lowe, and others.

Denney, Leftwich & Glasgow, Nashville, for J. Douglas Wright, and others.

Ned Lentz and Morris Levine, Nashville, for William H. Robin.

Hume, Howard, Davis & Boult, Nashville, for Globe Indemnity Co.

Bass, Berry & Sims, Nashville, for First American National Bank.

FELTS, P. J., (Middle Section). Complainants filed the bill to cancel and remove as a cloud on their title a deed by the terms of which they conveyed to defendants a tract of

3.74 acres of land, fronting on Old Hickory Boulevard and Dickerson Road in Davidson County, for a consideration of $10,000 cash in hand paid. The ground of relief alleged was that the deed was a forgery.

Defendants denied that the deed was a forgery and averred that they had bought the land in good faith through complainants' agent E. W. Parrish for $10,000 and had paid for it by three checks—a check to him for $1,000 as earnest money, a check to him for $100 for a title policy, and a check for the balance of $8,900 to complainants; and that the agent had delivered to defendants a deed which appeared to have been properly signed and acknowledged by complainants before W. H. Robin, a notary public in Davidson County.

Defendants Wright and wife filed their answer as a cross bill bringing in as additional defendants Robin, the notary public, Globe Indemnity Company, surety on his bond as notary, and the First American National Bank which had issued a cashier's check to complainants for $8,900, in lieu of the personal check which defendant J. Douglas Wright had issued to them for $8,900.

Defendants alleged in their cross bill that if there was any fraud in the transaction, it was the fraud of complainants' agent Parrish, for which complainants were liable; that if the deed was not properly signed and acknowledged by them before the notary, he and his surety were liable for his improper certification of the acknowledgment; and that the Bank was liable for its negligence in not putting on the cashier's check the words which were on Wright's check, viz.: ''In full payment for lot, corner Old Hickory Blvd. and Dickerson Road''.

Answers were filed to the cross bill, a large amount of proof was taken, and the cause heard before the Chancellor. He filed an opinion holding that the deed was a forgery but that complainants were not entitled to have it cancelled and removed as a cloud on their title except upon repayment of $8,900 which they had received from defendants by way of the cashier's check. He further held that the notary and his surety were liable under the cross bill; and that the Bank was not liable.

He entered a decree that the title would remain vested in defendants unless complainants paid the sum of $8,900 into court within 60 days, and if they did, the title would be vested in them; that the notary and his surety were liable to defendants Wright and wife for such damages as they sustained by the notary's wrongful certification of the acknowledgment, and a reference was ordered to fix the amount thereof; that the cross bill was dismissed as to the Bank; and that the decree was without prejudice to complainants' rights, if any, against the notary and his surety.

All the parties acquiesced in this decree except complainants, G. Gilbert Lowe and wife Martha Lowe, and cross defendant William H. Robin, the notary public. These parties appealed and have assigned errors. We first consider the matters raised by complainants' assignments.

They insist that the deed was a forgery, utterly void, passed no title, and the Chancellor should have removed it as a cloud on their title, without condition—without requiring them to pay $8,900 into court; that the Chancellor erred in holding that E. W. Parrish had any authority, real or apparent, as their agent to sell this land,

and that Wright was not negligent in purchasing it without inquiring as to such authority; that the Chancellor erred in holding Wright was not negligent in not seeing that the Bank put on its cashier's check the same notation he had had on his check; and that the Chancellor erred in dismissing the cross bill as to the Bank.

The parcel of land in suit was part of a tract of 70 acres of land, lying on Old Hickory Boulevard and Dickerson Road, which was given to G. Gilbert Lowe by the will of his great uncle. See, Nashville Trust Co. v. Grimes, 179 Tenn. 567, 569, 167 S. W. (2d) 994. In September 1951, he had this 70-acre tract surveyed and a plat made of it; and in January 1952, he employed E. W. Parrish, a Nashville realtor, as his agent to develop and sell a sub-division of it. Some 50 acres of this tract was subdivided into 45 lots, each lot containing about an acre, and Parrish had a plat made of it, naming it "Hickory Acres Subdivision * * * G. Gilbert Lowe, owner; E. W. Parrish Realty Company, developer" (Ex. map).

The 3.74 acre lot here involved was not in that subdivision but lay just east of it. But Parrish put on this lot a large "For Sale" sign at the same time he erected some 20 or more "For Sale" signs on these 45 lots. He was engaged in selling these lots and had sold some 11 of them at the time he hold this 3.74 acre lot to Wright. His sales of those 11 lots to other persons were made under circumstances more or less similar to those of his sale of this lot to Wright.

Complainants were living near Henderson in Chester County, Tennessee, but had recently lived in Nashville and frequently came back to Nashville and this subdivision. They entrusted Parrish with well-nigh unlim-

ited authority in selling these lots. He told them he had a notary public who knew the signatures of each of them and it was not necessary for them to go before the notary to acknowledge the deeds. He would have one or the other of them sign the names of both of them to the deeds, have the notary affix his seal and certificate to them in proper form, deliver them to the purchasers, receive the purchase money, and later account to complainants.

Complainants were not ignorant or illiterate. Mr. Lowe was 42, had had three years in a university, and was a teacher of agriculture; and Mrs. Lowe was mature, intelligent, and well educated. Nor were they inexperienced. They had conveyed parts of this 70-acre tract by two deeds which they had properly signed and acknowledged. Nevertheless, they approved Parrish's sales of 11 of these lots when not one of these deeds had been properly signed and acknowledged by them. They later ratified all of these deeds.

Parrish was often delinquent in his payments of the sums due complainants from these sales. In April 1953, he had delivered their deeds and closed sales of three lots, but had not paid them the proceeds. He owed them $1,150.85 on each of these lots, or $3,452.55, and two of his checks for $1,150.85 each, one dated April 6, and one April 7, 1953, had been dishonored. The Lowes were pressing him for payment. On April 27, 1953, Mrs. Lowe met him at a bank in Nashville, he handed her $1,000 in money, and she got a cashier's check for that amount; and on May 1, 1953, he delivered to complainants the cashier's check for $8,900, under circumstances hereinafter set out.

About April 1, 1953, Wright saw Parrish's "For Sale" sign on this 3.74 acre lot, telephoned Parrish about it, and was told by Parrish that it was for sale. Wright offered $8,500 for it, but Parrish said this offer was not enough and he would not submit it to the Lowes. Some three weeks later, Parrish told Wright they would sell this lot for $10,000.00 cash. Wright agreed, Parrish had him sign a contract and give Parrish a check for $1,000 as earnest money on April 27, 1953.

On April 30, 1953, Parrish had Wright meet him at the First American National Bank, Melrose Branch, where he delivered the deed, and Wright gave him a check for $100 for the title policy and a check to complainants for $8,900, marked: "In full payment for lot, corner Old Hickory Blvd. and Dickerson Road". Parrish then said the Lowes would not take a personal check but required a cashier's check. Wright asked the teller to put this same notation on the cashier's check; but left before the check was completed. It did not bear that notation, but was payable to the order of "G. Gilbert Lowe & Martha Lowe", dated May 1, 1953, for $8,900.

On May 1, 1953, Parrish brought this $8,900 cashier's check to the Lowes' home, told them that he had just closed a deal in Shelbyville and the proceeds of this check, payable to them, belonged to him; that the person issuing the check knew he owed them and wanted them to get their money out of it and made it payable to them for that reason. Parrish and Lowe went to the First State Bank in Henderson, and Lowe deposited this $8,900 cashier's check to the joint account of himself and Mrs. Lowe in that bank. Deducting $2,452.55, as the amount Parrish owed them, Lowe had the bank issue to Parrish a cashier's check for $6,000 and give him $447.45 in money.

Thus it appears that Parrish, as agent for complainants, negotiated a contract for them to sell this land to the Wrights; that he received the purchase price in the form of two checks to himself (for the earnest and for the title policy) and a check to them for $8,900, which they received in the form of a cashier's check; and that he delivered a deed for them conveying this land to the purchasers, the Wrights.

Complainants claim that Parrish had no authority to act as agent for them in any part of this transaction; that they did not sign their names to this deed or authorize him to negotiate any contract to sell this land to the Wrights, or to receive any of the purchase price. This raises the questions of how authority is to be evidenced, and whether it has been proved in this case.

To authorize an agent to execute a deed in the name of another as his principal, T. C. A. sec. 64-503, the authority must be by deed or by writing of equal formality with a deed. Smith v. Dickinson, 25 Tenn. 261, 262; Farris & Hampton v. Martin, 29 Tenn. 495, 498; Cain v. Heard, 41 Tenn. 163, 166.

But the authority of an agent to contract to sell land in the name of his principal need not be in writing. Though the statute of frauds, T. C. A. sec. 23-201 (4), requires a contract for sale of land, or a memorandum of it, to be in writing and signed by the party to be charged or by his duly authorized agent, it does not require that such agent's authority shall be in writing. Texas Co. v. Aycock, 190 Tenn. 16, 227 S. W. (2d) 41, 17 A. L. R. (2d) 322; Cobble v. Langford, 190 Tenn. 385, 230 S. W. (2d) 194.

There was no proof of any writing authorizing Parrish as agent to execute the deed for the Lowes, and the proof was that he had no such authority. It seems that at the time of the taking of the proof in this case Parrish had been convicted and imprisoned and was not available as a witness. The Lowes said he had no such authority and that the deed was a forgery. Being a forgery, it was, as they contend, utterly void and passed no title to the Wrights.

But from this it does not necessarily follow that the Wrights acquired no right or interest in the land by this transaction. As we have seen, Parrish, as agent of the Lowes, made a contract for them to sell this land to the Wrights for $10,000 cash, which sum they paid and $8,900 of which was received by the Lowes in the cashier's check. If Parrish had authority to act for them in this matter, the Wrights acquired an equitable interest in the land, not by the deed, but by this contract.

As stated above, such authority in Parrish was not required to be in writing but could be oral or in parol; and such authority, or the fact of agency may be proved, like any other fact, by circumstantial evidence. Kenner v. City National Bank, 164 Tenn. 119, 46 S. W. (2d) 46; Conaway v. New York Life Insurance Co., 171 Tenn. 290, 102 S.W. (2d) 66; Boillin-Harrison Co. v. Lewis & Co., 182 Tenn. 342, 354, 187 S. W. (2d) 17.

Most of the large amount of proof in this case was directed to this question of Parrish's authority. It is admitted that he had general authority as agent for the Lowes to sell the lots in the subdivision which was near this lot and part of the same tract of land. But Mr. Lowe said Wright had no authority to sell this lot, because it

was not for sale but was to be held until a water line was extended to it, which would greatly increase its value.

The weight of the evidence, however, is that this lot was for sale. Mr. Lowe had had all this land surveyed and had a plat made of it, including this particular lot. Parrish had this plat, and showed it to another realtor, Forrest Graham, who had called Lowe by telephone on April 23, 1953, about selling this lot; and Lowe admits that he told Graham that he would consider selling it for $10,000 cash if Graham could find a purchaser willing to give that much.

This question naturally rises: Why would Lowe authorize an outside real estate agent, like Graham, to sell this lot for him for $10,000 and yet deny such authority to his own broker, Parrish, whom he had authorized to sell his other lots in the same vicinity? As we have seen, Parrish had a plat of this lot, from which the description in the deed to the Wrights appears to have been taken, and Parrish also had one of his "For Sale" signs erected on this lot. While there is dispute as to the nature of this sign, it is undisputed that it was on the lot and led Wright to believe Parrish was Lowe's agent to sell the lot.

Upon all the circumstances, it seems reasonable to conclude that the Lowes employed Parrish as their real estate broker and gave him very general and broad authority to sell not only the 45 lots in the subdivision, but also this particular lot in the same area; and that, as such agent, he negotiated this contract with the Wrights under circumstances more or less similar to those in his sales of those 11 lots, which sales complainants afterwards ratified.

It is true that in this transaction Lowe's agent Parrish undertook to defraud both parties. He induced the Wrights to pay the purchase price by delivering to them the forged deed; and he concealed the matter from his principals, the Lowes, and falsely represented the proceeds of the sale to be his money.

This $1,000 earnest money check was payable to him and it seems very probable that he cashed it and paid the $1,000 to Mrs. Lowe on his indebtedness to them. But the cashier's check for $8,900 was payable to them and they received its proceeds—that is, they endorsed and deposited it to their joint account in the bank.

It is true they say that Parrish told them this cashier's check to them was his, representing a deal he had made in Shelbyville; and that they accepted this story without question, and withdrew from their account and gave him all of the $8,900 except what he said he owed them. And when they did this, they knew he had been wrongfully withholding their funds from his sales of the lots, and they had suspected him of forging one or more of those deeds.

After they had received this cashier's check payable to themselves for $8,900 and had deposited it to their account—after they had thus received this money, their giving of any part of it to Parish was, in our opinion, due to no fault of Wright, or of cross defendant Bank, but solely to their own fault and culpable negligence.

After having thus parted with the proceeds of this sale, under the circumstances here appearing, complainants, we think, are in no position to repudiate it and ask relief against it in a Court of Equity, without first restoring what they received. In our opinion, this maxim of equity

applies: "He who seeks equity must do equity". 1 Gibson's Suits in Chancery (5th ed.), sec. 48. Also, another maxim comes into play:

"Where one of two persons must suffer loss by the acts or fraud of a third party, he who enabled that third party to occasion the loss, or to commit the fraud, ought to be the sufferer". 1 Gibson's Suits in Chancery (5th ed.), sec. 61, and cases there cited; Boillin-Harrison Co. v. Lewis & Co., supra, 182 Tenn. 360, 187 S. W. (2d) 24, and cases there cited.

So we think the Chancellor properly held that complainants were not entitled to repudiate this contract of sale, without first restoring the $8,900 which they received from the purchasers, J. Douglas Wright and wife Willimae Wright.

This disposes of all of complainants' assignments of error except the last one, by which they complain of the dismissal of the Wrights' cross bill as to the Bank. The Wrights do not complain of this; and we think complainants cannot.

This cross bill did not set up any right in complainants or ask any relief for them, and, therefore, could not have supported any decree for them. Such a decree would have been *coram non judice* and void. 1 Gibson's Suits in Chancery (5th ed.), sec. 597. Since no relief could have been decreed them on the cross bill, they can not complain of its dismissal.

This brings us to the assignment by W. H. Robin, the notary public. He contends that the Chancellor erred in finding that he was negligent in certifying to the acknowledgment of the deed to the Wrights and

was liable to them for any damages they thereby sustained.

This deed was on a printed form and the notorial certificate was in the usual form, reciting: ''Personally appeared before me, *William H. Robin,* a Notary Public in and for said County and State, the within named *G. Gilbert Lowe and wife, Martha Lowe* the bargainors, with whom I am personally acquainted, and who acknowledged that *they* executed the within instrument for the purposes therein contained * * *''.

Defendant Robin, the notary, admits that he certified to this acknowledgment, and that neither G. Gilbert Lowe nor Martha Lowe appeared before him when he signed this certificate or at any other time. He further admits that he did not know them and had never seen either of them until the taking of the proof in this case.

Defendant Robin was a real estate agent with an office on Union Street in Nashville. E. W. Parrish was a real estate agent with an office on Woodland Street in east Nashville. Defendant Robin said that Parrish brought a man to his office, introduced the man to him as G. Gilbert Lowe, and asked him to take Lowe's acknowledgment to a deed, and that he took the acknowledgment; and that he continued to take acknowledgments of this man as Lowe to other deeds for a period of some six months until the acknowledgment of this deed to the Wrights.

It appears that defendant Robin certified to the acknowledgments of all of these deeds by Lowe and wife to the purchasers of these lots. Robin says that Parrish would come each time with this man whom Robin believed to be G. Gilbert Lowe but who was an impostor, and he would take his acknowledgment to the deeds. He said

that he had never seen this man except when he would come to his office with Parrish, and knew nothing about him.

Robin further said that this impostor was the only person who ever appeared before him to acknowledge any of the deeds in question, and that neither Mrs. Lowe nor any other woman ever appeared before him to acknowledge any of the deeds. However, he admits that he signed the certificates to all the deeds reciting that both G. Gilbert Lowe and Martha Lowe, with whom he was "personally acquainted", had personally appeared before him and acknowledged that they had executed these deeds.

He said that when he would take this impostor's asknowledgments there was only one signature to the deeds and that the name of Martha Lowe did not then appear on any of the deeds. But on cross-examination he admitted that he did not read the body of the deeds and did not know whether the certificate contained the name of only one acknowledger or more than one, or whether it recited that *"he"* or *"they"* executed the within instrument.

It was his duty as notary, when taking the acknowledgment of a person not well known to him, to exercise reasonable care to prevent imposition, since the effect of that imposition would not end with his own deception, but would extend to innocent persons relying on his authentication of the instrument; and he and his surety are liable for his breach of that duty causing damages to a person so relying. Figuers v. Fly, 137 Tenn. 358, 370, 193 S. W. 117; State ex rel. First Trust & Savings Bank v. Easley, 176 Tenn. 185, 189, 140 S. W. (2d) 149.

We think defendant Robins' own testimony shows that he failed to exercise ordinary care to prevent imposition by this impostor. The names of both Mr. and Mrs. Lowe appear in the body of these deeds and in the acknowledgments; and it seems wholly unreasonable that this notary could have failed to see their names.

It seems to us that this is a much stronger case of negligence than were the cases of Figuers v. Fly and State ex rel. First Trust & Savings Bank v. Easley, in both of which the notary public and his surety were held liable for his false and negligent authentication of an instrument.

All of the assignments of error are overruled, and the Chancellor's decree will be affirmed. This decree contains a mistake in the description of the land, and will be corrected so as to embody the description as set out in the deed (Ex. 5, dep. G. Gilbert Lowe). As thus corrected, the decree will be affirmed and the cause remanded to the Chancery Court for further proceedings not inconsistent with this opinion. One-half the costs of the appeal will be taxed against appellants Lowe and wife and the surety on their appeal bond, and the other half against appellant W. H. Robin and the surety on his appeal bond.

Hickerson, J., concurs.

Shriver, J., not participating.