# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

September 1, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

ALLISON COOKE BATTLES and )
LESLIE COOKE JONES, )
                                   )
    Plaintiffs/Appellants, )
                                   )
                                   )    Appeal No.
                                   )    01-A-01-9809-CH-00497
VS. )
                                   )    Sumner Chancery
                                   )    No. 97C-136
FIRST UNION BANK, PEGGY SMITH )
BEVERLY G. PITT. LEIGH ANN )
HOWARD, and EXCHANGE )
INSURANCE COMPANY, )
                                   )
    Defendants/Appellees. )

## APPEALED FROM THE CHANCERY COURT OF SUMNER COUNTY
### AT GALLATIN, TENNESSEE

### THE HONORABLE TOM E. GRAY, CHANCELLOR

BRENDA RHOTON LITTLE
Suite 511, Cummins Station
209 Tenth Avenue, South
Nashville, Tennessee 37203
        Attorney for Plaintiffs/Appellants

H. ROWAN LEATHERS
2200 First Union Tower
150 Fourth Avenue North
Nashville, Tennessee 37219
        Attorney for Defendants/Appellees First Union Bank,
        Peggy Smith, Beverly Pitt and Leigh Ann Howard

## AFFIRMED AND REMANDED

                                        BEN H. CANTRELL,
                                        PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
CAIN, J.

## O P I N I O N

Two of the beneficiaries of a will sued the witnesses and a notary public because the will was not properly executed. The plaintiffs also sued a bank, the witnesses' employer, for not training its employees on how to properly witness wills. The Chancery Court of Sumner County granted the defendants summary judgment. We affirm.

## I.

The plaintiffs are the daughters of Cleon H. Cooke, Jr., who prior to his death owned a business in Sumner County. On November 28, 1995 one of the plaintiffs took Mr. Cooke to a branch of the First Union National Bank in Hendersonville. While Mr. Cooke waited in the car, the daughter went inside and asked Beverly Pitt, a customer service representative, to go out to the car and notarize some documents for Mr. Cooke. Ms. Pitt observed Mr. Cooke sign a document which he then handed to her without comment.

Ms. Pitt took the document, entitled "Last Will and Testament," into the bank and got two bank employees to sign the will in the place designated for witnesses. The statement appearing on the will signed by the two witnesses stated the following:

> We, _____ and _____, being the attesting witnesses to the foregoing will of Cleon H. Cooke, Jr., being first duly sworn, make oath that he signed the foregoing will consisting of two typewritten pages, this page not included on the ___ day of _____, 1995, in our joint sight and presence and declared the same to be his last will and testament; that we, in his sight and presence and in the sight and presence of each other, at his request, signed our names thereto as attesting witnesses; that we believed the said Cleon H. Cooke, Jr. to be, at that time, of sound mind and disposing memory; and that this affidavit is being made at the request of the said testator.
>
> Witness our signatures on this the ___ day of _____, 1995.
>
> _____
> _____

The blanks were filled in by hand with the names of Peggy Y. Smith and Leigh Ann Howard and the date of November 28, 1995. The signatures of the two witnesses appear below on the lines provided for them.

Immediately below the witnesses' signatures, Beverly G. Pitt certified that the instrument was "Sworn to and subscribed before me this the 28th day of Nov., 1995."

The plaintiffs in this case are Allison Cook Battles and Leslie Cooke Jones. They allege in the complaint that they are two of Mr. Cooke's seven children living at the time of his death. The will Mr. Cooke executed on November 28, 1995 left his business known as C & S Cleaners of Hendersonville to his living children. The residue of his estate would have passed to his widow, Angelina Q. Cooke, if she survived him.

The complaint also alleged that Mr. Cooke had a 1976 will that left all of his property, real and personal, to Angelina Q. Cooke; that when the 1995 will was offered for probate, Angelina Q. Cooke filed a will contest, alleging that the 1995 will was not properly executed and that the decedent's last will was the 1976 will. The complaint concluded that if the will contest is successful, the plaintiffs will lose the one-seventh share of their father's business they would have received under the 1995 will.

As a basis for liability, the plaintiffs allege that the witnesses were negligent, that they committed perjury in signing a false affidavit, and that the notary was negligent in failing to see that the documents she notarized were properly attested in accordance with the law, and in failing to keep a proper log of the signatures she notarized. The plaintiff sued the bank, alleging it was liable for the acts of its employees. They also sued the notary's bonding company.

The chancellor granted summary judgment to all defendants.

## II.

The facts are not in dispute. The only question is whether the defendants are entitled to a judgment as a matter of law.[1] *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993).

### a. The Notary

The appellants assert that the notary had a duty to read the attestation clause and see that the will was properly executed and witnessed. They did not cite any authority for that position, and we are not aware of any. On the other hand, we are aware of authority for the notary's position that she is not under a duty to give advice about the legal effects of papers to which she witnesses a signature. *Vanderhoof v. Prudential Savings and Loan Association*, 120 Cal. Rptr. 207 (Cal. App. 1975).

In *Vanderhoof,* the notary knew that she had been asked to witness the signature of a testator to his last will and testament and that the testator was of the belief that his notarized signature would make a valid will. The notary also knew that the testator was mistaken. Nevertheless, she notarized his signature without advising him that the law required two witnesses to make the will valid. The California Court of Appeals said:

> We conclude that, under the circumstances alleged
> in the complaint, Larson's duty as a notary public was

---

[1]There are two critical issues that were not raised in the court below. The first is whether this action is premature. The complaint does not allege that the probate court invalidated the will, only that it had been challenged. We might assume what the outcome will be in view of the requirements of the Wills Act, *see* Tenn. Code Ann. § 32-1-104, but so far as the record shows the will has not been declared invalid.

The second is the absence of the other siblings. As we read Rule 19.01, Tenn. R. Civ. Proc., they would be indispensable parties. But, since these issues have not been raised below, we will not address them here.

> simply to take the acknowledgment by Swanson that he was the person who executed the document in question and to so certify. Having done so she performed her duty under the law. The failure to volunteer information as to the legal effect of the manner of its attestation is not actionable for the reason that she not only had no duty in this respect, but for her to have done so would have been an illegal act.

120 Cal.Rptr. at 209.

So far as we can determine, the cases in Tennessee dealing with a notary's duties generally find only a duty to make sure the person executing a document is the person he/she purports to be. *See Figures v. Fly*, 193 S.W. 117 (Tenn. 1917); *State v. Easley*, 140 S.W.2d 149 (Tenn. 1940). That duty requires only an exercise of ordinary care because the notary "is not an insurer of the truth of [her] recitals." *Figures v. Fly*, supra at 120. Beyond that we are confident that a notary does not have a duty to give legal advice.

The notary's certificate had no bearing on the validity of the will. The service of a notary is not mentioned in the Wills Act. Why she was asked to witness the signatures does not appear in the record. The affidavit of the two witnesses would have made probate of the will easier, *see* Tenn. Code Ann. § 32-2-110, but it did not add to or take from the will itself. The witnesses' signatures alone without the oath included in the affidavit would have been sufficient. *See* Tenn. Code Ann. § 32-1-104. Therefore we cannot see how the notary's services affected the will or caused the plaintiffs any loss.

**b. The Witnesses**

The plaintiffs also assert that the witnesses had a duty to read the certificate they signed prior to signing it, and to refuse to sign it because it was not true. The appellees do not contest the statement as a general principle. We would go further and say that any affiant, making a statement under oath, has a solemn duty

to state the truth.  We also think the witnesses would concede that the statements in their affidavit were not true.  They did not see the testator sign the will, and they did not sign it in his presence.

But did they have a duty to the plaintiffs?  A duty owed by the defendant to the plaintiff is an essential part of a claim for negligence.  *Bradshaw v. Daniel*, 854 S.W.2d 865 (Tenn. 1993).  The existence or nonexistence of a duty is a question of law for the court.  *Glenn v. Conner*, 533 S.W.2d 297 (Tenn. 1976); *Dooley v. Everett*, 805 S.W.2d 380 (Tenn. App. 1990).  To determine if a duty exists a court should consider

> . . . whether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of others -- or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant.  This is entirely a question of law to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court . . . .  A decision by the court that, upon any version of the facts, there is no duty, must necessarily result in judgment for the defendant.

*Bradshaw v. Daniel*, 854 S.W.2d at 869.

What interest of the plaintiffs was invaded by the fault of the witnesses to the will?  In the abstract, the plaintiffs had an interest in receiving a part of their father's estate, but even with a properly executed will they did not have a vested interest in his property while he lived.  Since "a will speaks as of the date of the death of the testator" a beneficiary under a will has no property rights in the testator's property until the testator's death.  *Doughty v. Hammond*, 341 S.W.2d 713 at 716 (Tenn. 1960).   The right to leave property by will is a right given only to the testator. *Epperson v. White*, 299 S.W. 812 (Tenn. 1927). When the plaintiffs left the bank on the fateful day of November 28, 1995, they had exactly the same interest they had

when they arrived: a hope that they could receive a portion of their father's estate. We do not think the witnesses had a duty to see that the hope turned into a reality.[2]

We are aware of cases where a beneficiary under a will has been able to sue a person who undertakes to draw a will when the will fails for a lack of due execution. *See Biakanja v. Irving*, 320 P.2d 16 (Cal. 1958) and cases collected at 65 A.L.R.2d 1363. But in drafting a will, a defendant assumes a much greater burden than one who is merely called to witness the testator's signature. And that is why we are comfortable in saying that the community may impose a legal burden on one and not the other.

### c. The Bank

The plaintiffs asserted that the Bank had a duty to train its employees on the legal requirements for a valid will. This claim was not pressed on appeal, and we are not aware of any authority for it. The Bank was also sued for the fault of its employees. Since we have found that the employees were not at fault, the Bank was also entitled to summary judgment.

---

[2]Although it was not raised in the court below the witnesses in this case may be entitled to the same immunity they would have enjoyed if they had given the same testimony in open court. This so-called "witness immunity" shields a witness in a judicial proceeding from an action for damages for false testimony -- even though given maliciously or with knowledge of its falsity. *Buckner v. Carlton*, 623 S.W.2d 102 (Tenn. App. 1981). *See also Cooley v. Galyon*, 70 S.W. 607 (Tenn. 1902); *Felts v. Paradise*, 158 S.W.2d 727 (Tenn. 1942); *Logan's Supermarkets, Inc. v. McCalla*, 343 S.W.2d 892 (Tenn. 1961).

The question obviously is whether the execution of the affidavit occurred in a "judicial proceeding." The shield has been held to apply to witnesses appearing before a school board in a teacher tenure case, *Buckner v. Carlton*, 623 S.W.2d 102 (Tenn. App. 1981); and to witnesses appearing before a legislative committee, *Logan's Supermarkets v. McCalla*, 343 S.W.2d 892 (Tenn. 1961). Since the affidavit executed in this case was drawn for use in the probate court, the defendants may be entitled to the same immunity.

The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Sumner County for any further proceedings necessary.  Tax the costs on appeal to the appellants.

- 8 -

_____
BEN H. CANTRELL,
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
WILLIAM B. CAIN, JUDGE

- 8 -