IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On-Brief November 21, 2003

## SUE KNIGHTON v. CHARLES E. HAYES, SR.

**A Direct Appeal from the Chancery Court for Shelby County**
**No. CH-01-0290-1     The Honorable D. J. Alissandratos, Chancellor**

---

### No. W2003-00837-COA-R3-CV - Filed February 10, 2004

---

Appellee-wife of deceased spouse sued a notary public and his bonding company for damages resulting in the notary public's taking the acknowledgment of the signature of wife's imposter to a waiver of retirement benefits and completing the acknowledgment certificate. The trial court found that the notary public owed a duty of reasonable care which he breached resulting in damage to appellee-wife and entered judgment for wife. Notary public appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

William A. Cohn, Cordova, For Appellant, Charles E. Hayes, Sr.

Kirk A. Caraway, Memphis, For Appellee, Sue Knighton

**OPINION**

On February 9, 2001, plaintiff, Sue M. Knighton, ("Plaintiff" or "Mrs. Knighton") filed her complaint against defendants, Charles E. Hayes, Sr., and Ohio Casualty Insurance Company, seeking damages allegedly caused by the negligent and fraudulent acts of the defendant, Charles E. Hayes, Sr. ("Hayes" or "Defendant"). The complaint alleges that the plaintiff and Joe Knighton, now deceased, married on April 10, 1984, and lived together until they separated in 1988. They never divorced. Mr. Knighton was employed by W. M. Barr & Company ("Barr") until his termination in 1988. While employed, he had a retirement fund with Barr that provided that his spouse was entitled to a fifty percent joint survivor annuity. Plaintiff alleges that when she applied for social security benefits in January of 2000, she learned that she was a fifty percent beneficiary of the Barr retirement fund and when she inquired of Barr concerning the fund, she was informed that all of the funds had been withdrawn payable to Joe Knighton pursuant to a waiver she had signed authorizing

such payment. When she reviewed Barr's documentation, she learned that the signature on the document was not her signature, although the defendant, Hayes, a notary public, had notarized the signature. She avers that the amount paid by Barr to Mr. Knighton was $37,452.57, and, pursuant to the plan, she was entitled to one-half of that amount - $18,726.28. She alleges that the notary public, defendant Hayes, violated his duty as a notary public in acknowledging the instrument signed by a purported Mrs. Knighton and that he committed a fraud or was negligent in his duties which caused her loss. The complaint further avers that Ohio Casualty Company issued the notary public bond required by statute and is liable for the sums up to the amount of the bond to which she is entitled.

The defendants, Hayes and Ohio Casualty Company, joined issue on the material allegations of the complaint and denied that they were guilty of any negligence or any fraudulent conduct which caused or occasioned damage to the plaintiff.

A non-jury trial was held on October 7, 2002, and the transcript reveals the following pertinent facts:

Mrs. Knighton and Joe Knighton were married in April, 1984, and lived together as husband and wife from 1984 to 1988 when they separated but never obtained a divorce. Mr. Knighton died in 1996. During the course of the marriage, Mr. Knighton was employed with W. M. Barr & Company for approximately 14 years, until his dismissal in 1988. As an employee of Barr, Mr. Knighton had a pension retirement account with the company which, by virtue of the terms thereof, his spouse had a vested interest in fifty percent of the retirement account. Mrs. Knighton was unaware of this interest until January of 2000. She was informed of her interest while applying for social security benefits. She thereupon contacted Barr and learned that the funds had been withdrawn, by virtue of a document dated May 20, 1992, entitled "Benefit Election Form - Married Participant," which was purportedly signed by Mr. Knighton and Sue M. Knighton. Mrs. Knighton asserts that Mr. Knighton perpetrated a fraud by having a women impersonate her and sign the statement waiving her right to receive the fifty percent share of the retirement account. The waiver statement, included as part of the Benefit Election Form, states:

> I, the participant's spouse, certify that I am legally married to the participant. I have read and understood this booklet and am aware of my right to receive a 50% joint and survivor annuity. I hereby elect to waive my right to such annuity and consent to my spouse's election to the alternative form of benefit payment set forth above. I understand that this waiver and consent may not be revoked unless my spouse elects to revoke his/her election, in which case my waiver and consent is automatically revoked.

The signature affixed to this statement was misspelled to read "Sue M. Kinghton." The signature was dated May 20, 1992. Mrs. Knighton maintains that she did not sign the waiver statement.

The benefit election form included two additional acknowledgment clauses. The first clause, entitled "Participant Acknowledgment," was signed by Joe Knighton and dated May 26, 1992. The second clause, entitled "Spouse Acknowledgment," bears the signature of "Sue M. Kinghton," and was dated May 26, 1992. Upon review of the document, it is again apparent that appellee's name was misspelled. Both signatures were notarized by defendant Hayes. Mrs. Knighton maintains that she did not sign the "Spouse Acknowledgment" clause.

In response to interrogatories propounded by Mrs. Knighton, Hayes stated that decedent was an acquaintance and stated that he charged decedent a notary fee of $10.00 for documents notarized on May 26, 1992. Hayes described the steps that he takes "as a matter of course before notarizing a document," including "requiring a drivers license or any other picture document which would lead me to believe that a person is the same person that he says he is," and watching the signor as he or she signs. Hayes specifically described the steps that he took in notarizing documents for decedent on May 26, 1992, stating:

> I did not notarize any documentation for any unidentified person. That person produced an item which clearly identified themselves as the person they claimed to be. I did not notarize any documentation for Joe Knighton on that date that I can recall.

> ****************************************************

> The person who was signing the document identified herself as the person on the document and was so identified by Joe Knighton. Further, she presented an identification card which indicated that she was that person.

> As to the signatory not signing the document correctly, I have found over the years that many low income people do not have a good education and cannot spell. Sometimes this includes misspelling their own names. Some people cannot even write their names and must sign with an "X."

In response to an order entered compelling Hayes, *inter alia*, to submit complete and adequate responses to each of Mrs. Knighton's stated interrogatories, Hayes filed an amended response to Mrs. Knighton's first set of interrogatories that included the following:

> Mr. Knighton was an acquaintance. I had done business with him and his wife several years ago. Because this was so long ago, I am unsure if I only provided him an estimate for damages or if I actually did body work on his automobile. That is the only reason I am acquainted with Mr. Knighton and cannot remember any further details.

By Order of Judgment dated October 31, 2002, the trial court entered a judgment in favor of Mrs. Knighton, which states:

> On October 7, 2002, this matter was called for trial before the Honorable Chancellor D. J. Alissandratos, and after hearing all of the evidence in this cause, together with the arguments of counsel, the Chancellor found that Defendant Charles E. Hayes, Sr. was negligent in notarizing a document on May 26, 1992 in which an imposter misspelled Plaintiff Sue Knighton's name on certain documentation which waived her fifty percent vested interest in her husband's retirement account with W.M. Barr Company. Accordingly, the Chancellor found that Plaintiff was entitled to recover from Defendant Charles E. Hayes, Sr. an amount equal to fifty percent of her husband's retirement account with W.M. Barr Company, which equaled $18,726.00. Additionally, the Chancellor found, and it was stipulated by counsel, that Ohio Casualty Insurance Company bonded Defendant Charles E. Hayes, Sr. at all times relevant to this lawsuit in the amount of $10,000.00, and that such bond was mandated by state statute to protect innocent victims of Defendant Hayes' negligent acts as a notary. Therefore, the Chancellor returned a decision on October 7, 2002 in favor of Plaintiff Sue Knighton for $18,726.00, plus pre-judgment interest to be awarded from the date suit was filed, as well as the costs in this matter.[1]
>
> IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that Plaintiff Sue Knighton shall have and recover $18,726.00 in principle plus $4,190.88 in interest for a total of $22,916.98 from Defendant Charles E. Hayes, Sr. Defendant Ohio Casualty Insurance Company, which bonded Mr. Hayes for his notarial acts, is jointly and severally liable to Plaintiff for $10,000.00 of the judgment amount, which is the limit of its bond. The costs of this cause are to be taxed against the Defendants equally.

Prior to the trial court's entry of a final judgment, Mrs. Knighton filed a motion seeking discretionary costs. By order entered November 21, 2002, the trial court awarded Mrs. Knighton $687.80 in discretionary costs.

Hayes appeals, and we restate his issues as follows:

---

[1] Mrs. Knighton filed a Motion for Prejudgment Interest on October 15, 2002.

-4-

Whether the trial court erred in finding that Hayes acted negligently in notarizing the signatures of decedent's pseudo-spouse affixed to the benefit election form waiver and the "Spouse Acknowledgment" clause.

Whether Mrs. Knighton had a vested interest in her deceased husband's retirement funds.

Mrs. Knighton raises the additional issue of whether she is entitled to recover damages pursuant to T.C.A. § 27-1-122 for filing of a frivolous appeal. We note that Ohio Casualty did not appeal the trial court's final judgment, and therefore is not a party to this appeal.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

The primary issue in this case is whether the trial court erred in finding that Hayes acted negligently in notarizing the signatures of the woman posing as decedent's wife on May 26, 1992.[2] The trial court made the following oral findings of fact and conclusions of law in support of its judgment against Hayes on the grounds of negligence:

What's interesting in this case is that the Defendant Mr. Hayes has given testimony that this Court cannot reconcile. His interrogatories were prepared by his Counsel. But his Counsel is not a person who is going to make up the answers. Let's take for example Interrogatory Number 10 to the first set of interrogatories. The question is very simple. It's very forward. Please state how much your notarial fee was for notarizing a document for Joe Knighton on May 26, 1992. Answer: $10.00. Yet in the deposition of Mr. Hayes, he testifies he didn't charge for notarizing. Which is true?

---

[2] We note that Hayes misinterprets the law as it applies to the particular facts of this case, suggesting that "[t]here must be an allegation of undue advantage, fraud, or oppression." Our review of the case law cited by Hayes as support for this argument reveals that court's are willing to "lend a ready ear to evidence of undue advantage, fraud, or oppression" where the notary acknowledges a document to which he or she is a party, or in which he or she is directly or indirectly interested. *See Napier v. Stone*, 114 S.W.2d 57, 59 (Tenn. Ct. App. 1937) (citing *Cooper v. Hamilton Perpetual Bldg. & Loan Ass'n*, 37 S.W. 12, 13 (Tenn. 1896). In the instant case, there is absolutely no evidence that Hayes had a personal interest in the document(s) he notarized for decedent or a personal relationship with the signing parties. We therefore reject defendant's apparent assertion that such allegations and proof are necessary.

The statute 8-16-306 says as follows, a fee of $1.00 and no more is allowed to a notary public for recording in a well-bound book to be kept by such notary for the purpose of the notary's attestation, protestations and other instruments of publication.

Well, his signature to this interrogatories said he charged $10.00. He's only supposed to charge $1.00. He's supposed to keep a well-bound book. Why? Because exactly the issues that are arising today. No one is expected to have that kind of memory. That's the reason you have it written down.

The Court finds that from this evidence that the best characterization of Mr. Hayes to this duty and responsibility of trust is found in his words in his own deposition and it's quote, if I had caught it, close quotes. Speaking of the discrepancy of the spelling of Kinghton versus Knighton. If I had caught it. Excuse me. It was in the context of the six day discrepancy. I apologize. It was not the signature. If I had caught it, the six days discrepancy.

**************************************************

In his answers to interrogatories, he talks about acquaintance with the decedent, Mr. Knighton. Talks about having done business with him. And yet in his deposition he said he didn't know either one of the parties.

So here's the conflict. I don't know if he charged or didn't charge, because I have sworn answers both ways. I don't know whether he knew the parties or didn't know the parties. I've got answers both ways. I know this, that when it came to his own affairs in this case that he admits in his deposition that he was reckless and careless about even reading his own answers to interrogatories.

And then the question comes could he be equally reckless and careless when he was administering his duties of the trust that was placed on him by the State of Tennessee as a notary? And the Court concludes yes. Because he said, quote, if I had caught it. Well, it is obvious when you look at the portion of Exhibit Number 1, it is obvious that on the front page that is an I after the K. It does not have a dot above it, but it is clearly an I. One thing is for sure it sure isn't an N.

-6-

And then on the second page in the same form of handwriting, it is an I with a dot over it and not an N, and yet here is Mr. Joe Knighton. Yet Mr. Hayes says he always had a practice of requiring two identifications. In fact, he said that on at least four occasions that were quoted from the deposition.

How can he have two identifications to Ms. Knighton who is clearly the person who is here before the Court and that's her name. He looked at those picture ID's with signatures and failed to see that this signature of Kinghton isn't the same as Knighton. And the only answer is that he was as reckless and cavalier about his attention to that duty as he was to his attention of his own affairs about being sued....

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

So she acted in a timely fashion, Ms. Knighton, and she brought this action in a timely fashion. And she says, and the Court does believe, that based upon the standard of care as set forth by Mr. Scruggs,[3] and this Court finds is reasonable, did a person act reasonably prudently given the circumstances that were indicated at

---

[3] Scruggs testified that the standard of care for a notary public "in and around the Shelby County area," is that which a "reasonable and prudent and cautious person occupying the position of notary public would exercise under the circumstances." Applying this standard of care, Scruggs opined that Hayes breached the standard of care required of a notary public by failing to recognize the spelling discrepancies on the benefit election form, and by failing to take further measures to ensure the identity of the signor, including examination of the principal document. Scruggs further testified as to the "requirements" for proving the identity of the signor:

> The statute says first of all – there are two requirements for proving the identity of the person whose signature you are notarizing. And the first of those is the absence of any circumstances that would indicate that it is not the person.
>
> Then it goes on to say the second requirement is one of the following, either A – and I'm not doing this in the outline form in the statute, but A, personal acquaintance, personal knowledge of the person signing the document, or introduction by a person who is known to the notary[,] or provision of a document dated within the last five years, and it lists several documents, but it's a driver's license, a passport, or a military service ID card.
>
> But the first requirement is the absence of any circumstances that would lead a person to believe that it's not the signer that is actually before you.

Although Scruggs refers to statutory requirements of proving identification, we find no such statute outlining these requirements. We presume, instead, that he was relying upon case law that sets forth or recommends these requirements.

the time? And the answer is no Mr. Hayes didn't. There were indications that he was taking the signature of the wrong person. If he just looked at the ID and turned to the signature of the ID. He swears that he had them. He doesn't know anything about this, but he knows his habits. He knows his habits of charging $10.00 too and not keeping a bound book when you're only supposed to charge $1.00. And he denied that. I don't know what the credibility is, but I know this he knew that he was taking the signature of this man's wife. That's what the document says. Waiver of spouse in bold print.

So even if he didn't have any ID to speak of, is it a red flag when he just takes the signature and sees Kinghton? Of course it is. Would a reasonably prudent person under such circumstances find that they need some other indication that this is indeed the right person, and the answer is yes. And was it negligent not to do so? Yes, it was. And it was gross negligence. It was a breach of the standard of care not to read the signature. I don't believe he did. He doesn't even read documents that are important to his own case. Why should he bother to read this?

"[I]n order for there to be a cause of action for common law negligence, the following elements must be established: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause." *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991). "Causation, or cause in fact, means that the injury or harm would not have occurred 'but for' the defendant's negligent conduct." *Kilpatrick v. Bryant*, 868 S .W.2d 594, 598 (Tenn. 1993).

In *Lowe v. Wright*, 292 S.W.2d 413, 420 (Tenn. Ct. App. 1956), the appellate court examined the duty of a notary public, finding:

It was his duty as notary, when taking the acknowledgment of a person not well known to him, to exercise reasonable care to prevent imposition, since the effect of that imposition would not end with his own deception, but would extend to innocent persons relying on his authentication of the instrument; and he and his surety are liable for his breach of that duty causing damages to a person so relying. *Figuers v. Fly*, 137 Tenn. 358, 370, 193 S.W. 117; *State ex rel. First Trust & Savings Bank v. Easley*, 176 Tenn. 185, 189, 140 S.W.2d 149.

In *Peltz v. Peltz*, 2000 WL 1532996, at *2 (Tenn. Ct. App. Oct. 18, 2000), the Tennessee Court of Appeals, Middle Section, further explained:

> A notary public is held to the standard of a reasonably prudent person to ascertain an acknowledger's identity, but the notary is not an insurer of the truth of the recitals. *Figuers v. Fly*, 193 S.W. 117 (Tenn. 1916). A notary is a public officer, and a presumption arises that notaries perform their public duties correctly. *In Re Marsh*, 12 S.W.3d 449 (Tenn. 2000); *Manis v. Farmers Bank of Sullivan County*, 98 S.W.2d 313 (Tenn. 1936).

The trial court correctly determined that Hayes had a duty to act with the care of a reasonable and prudent person. The trial court was further correct in its finding that Hayes breached this duty of care by failing to recognize the spelling discrepancies apparent on the face of the benefit election form that he notarized for decedent. The trial court's finding is supported by Scruggs' unrefuted expert testimony that Hayes breached the requisite standard of care by notarizing documents containing two readily apparent misspellings of Sue M. Knighton's name.

We note that Scruggs further testified that the applicable standard of care requires a notary to verify the identity of a signor through either personal knowledge or acquaintance with the individual, or examination of an identification document such as a driver's license, passport, or military service ID card, where circumstances exist to cast doubt upon the identity of the signor. The trial court correctly found that the misspellings were sufficient to require further examination or inquiry into the identity of the signing party. Although Hayes' answers to plaintiff's interrogatories state that he was acquainted with the decedent, Hayes stated in his deposition that decedent was not, in fact, an acquaintance. Therefore, we find that Hayes had a duty to verify the identities of the decedent and the woman who signed Mrs. Knighton's name to the benefit election form via a driver's license, passport, military service ID card, or other accepted form of identification.

Hayes' answers to plaintiff's interrogatories and his filed affidavit state that he examined an identification document of the woman who identified herself as Sue M. Knighton, and determined that the identification "clearly indicated that she was the person signing the documentation." However, in his deposition testimony Hayes stated that he did not remember inspecting documents for the woman, or even witnessing her signature. In light of defendant's inconsistent testimony, we find that the weight of the evidence does not preponderate against the trial court's findings. The evidence is undisputed that Mrs. Knighton did not sign the waiver clause or the "Spouse Acknowledgment" clause included in the benefit election form. Assuming *arguendo* that the imposter presented two forms of identification to Hayes at the time of notarization, as Hayes testified in his deposition that he required on each occasion that he was asked to provide notarial services, we are persuaded that a proper examination of the signature on the identification document(s) would have alerted Hayes to the fact that he was taking the signature of the wrong person. Moreover, we are simply unwilling to reverse the trial court's finding of negligence where there is unrefuted expert testimony that Hayes' notarization of a document containing two misspellings of Sue M. Knighton's name constituted a breach of defendant's duty of care, and where the trial court had serious misgivings as to the credibility of Hayes' statements in light of repeated inconsistencies in the record. Therefore, on the basis of these conclusions, we find that the trial court correctly determined

that Hayes had a duty to exercise reasonable care in notarizing the benefit election form presented by decedent, and thereby breached this duty by notarizing a document that included two misspellings of Sue M. Knighton's name.

A finding of negligence also requires evidence of loss or injury on the part of the plaintiff. In the instant case, Deborah Hill ("Hill"), Barr's manager of benefits and human resources information systems, testified that a spouse would be entitled to fifty percent of the joint survivor annuity funds earned by the employee so long as the benefit election form's waiver clause remained unsigned. Moreover, the election benefit form's waiver clause signed by the imposter wife states in pertinent part:

> I have read and understand this booklet and am **aware of my right to receive a 50% joint and survivor annuity. I hereby elect to waive my right to such annuity** and consent to my spouse's election to the alternative form of benefit payment set forth above.

(emphasis added).

There is sufficient evidence to indicate that Mrs. Knighton had a vested interest in the decedent's retirement funds, and that she did not receive a share of decedent's retirement funds as a result of the fraudulently signed waiver clause.

A finding of negligence requires evidence that Hayes' negligent conduct was the actual and proximate cause of Mrs. Knighton's loss or injury. In **Lowe v. Wright**, 292 S.W.2d 413 (Tenn. Ct. App. 1956), the court determined that it was the duty of a notary, "when taking the acknowledgment of a person not well known to him, to exercise reasonable care to prevent imposition, since the effect of that imposition would not end with his own deception, but would extend to innocent persons relying on his authentication of the instrument; and he and his surety are liable for his breach of that duty causing damages to a person so relying." **Id**. at 420 (citing **Figuers v. Fly**, 137 Tenn. 358, 370, 193 S.W. 117; **State ex rel. First Trust & Savings Bank v. Easley**, 176 Tenn. 185, 189, 140 S.W.2d 149)).

In the instant case, Barr paid decedent a lump sum cash distribution of his pension funds in reliance upon the benefit election form and included clauses signed by decedent and his imposter spouse, and notarized by Hayes. Hill testified that Barr would not have accepted the benefit election form document without proper notarization of the "Participant Acknowledgment" and "Spouse Acknowledgment" clauses. On the basis of Hill's testimony, we find that Hayes' improper notarization of decedent's benefit election form permitted the payment of the funds and was the proximate cause of Mrs. Knighton's losses.

Finally, Mrs. Knighton seeks damages for frivolous appeal pursuant to T.C.A. § 27-1-122 (2000). We do not view this as a frivolous appeal and therefore deny Mrs. Knighton's request.

Accordingly, the judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of this appeal are assessed against the defendant-appellant, Charles E. Hayes, Sr., and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.